Martin B. Stecher, J.
Plaintiff seeks to recover $3,000' from the defendant for (quoting the indorsed complaint in its entirety) “breach of brokerage agreement.” The proof is, and I find, that on October 9, 1964, plaintiff, in search of the large profits his friend was making in the stock market, invested $3,000 in a discretionary account with the defendant, his friend’s stockbroker. During the following month, on 8 trading days, • 15 purchases of a single security were made in the plaintiff’s account aggregating over $31,000 and sales of the same security were made during the same period of time aggregating more than $26,000. The account yielded to the broker commissions of $1,021.87; and of the original $3,000 invested, the plaintiff eventually recovered $110.98 in cash and securities then having a value of $50.
The plaintiff’s contention is that this conduct of his account constituted “churning”: excessive trading by the broker in order to generate commissions for himself with relatively little concern for the welfare of the investor (Moscarelli v. Stamm, 288 F. Supp. 453; Hecht v. Harris, Upham & Co., 283 F. Supp. 417). The defendant, having been given the right to purchase and sell securities in plaintiff’s account without consulting plaintiff (“discretionary account”), became a fiduciary for plaintiff’s benefit, undertaking the highest obligation of good faith and fair dealing (Stevens v. Abbott, Proctor & Paine, 288 F. Supp. 836). What the plaintiff has attempted to prove is that defendant’s acts and intent in the management of this account were to profit the broker rather than the customer. If proved, this is a classic case of constructive fraud (Kronenberg v. Sullivan County Steam Laundry Co., 91 N. Y. S. 2d 144, affd. 277 *773 App. Div. 916). It is thus tort and not contract principles which apply, despite the name given the action by the plaintiff (Warner Bros. Pictures Dist. Corp. v. Endicott Circuit, 55 N. Y. S. 2d 300, affd. 269 App. Div. 934), and this court is empowered to grant the appropriate relief (CPLR 3017, subd. [a]).
Following a trial before the court (the jury having been waived1), the plaintiff, for the first time in a post-trial memorandum, made reference to the Securities Act of 1934 (U. S. Code, tit. 15, § 78j) and the regulations of the Securities Exchange Commission (Code Fed. Reg., tit. 17, § 240.10b-5 dealing with “ Employment of manipulative and deceptive devices ”) and the regulations of the New York and American Stock Exchanges prohibiting excessive trading in discretionary accounts.
None of these may be relied on by the plaintiff in this action. Violations of the Securities Act and the regulations issued thereunder are within the ‘1 exclusive jurisdiction ’ ’ of the Federal courts (U. S. Code, tit. 15, § 78aa; Gallo v. Mayer, 50 Misc 2d 385, 387); and the rules of the exchanges were not offered in evidence.
What remains then is a cause of action for common-law fraud. Such fraud must be proved by clear and convincing evidence (Stevens v. Abbott, Proctor & Paine, supra, p. 848; Manchel v. Kasdan, 286 App. Div. 483, affd. 1 N Y 2d 734; Lynch v. Gibson, 254 App. Div. 47, affd. 279 N. Y. 634). This is a greater degree of proof than is required in a Securities Act violation which need merely be proved by a fair preponderance of the credible evidence (Stevens v. Abbott, Proctor & Paine, supra, p. 847). Had the action been brought in the United States District Court where it belonged, it would have posed no problems for the plaintiff (cf. 80 Harv. L. Rev., p. 869 et seq).
There is, of course, no direct evidence of the broker’s intent, but circumstantial evidence, if clear and convincing, may operate to create a presumption of fraud (Booth v. Bunce, 33 N. Y. 139, 159; Kramer v. Metropolitan Life Ins. Co., 9 Misc 2d 92, affd. 3 A D 2d 766, affd. 4 N Y 2d 723). Such circumstantial evidence is available in the statements provided by the defendant. On one of the eight trading days alluded to above, November 17, 1964, the broker went long and short in the same security for the account of the plaintiff — and lost money both ways. (Horses could have given the plaintiff a fairer opportunity to realize on his investment.) Such evidence coupled with the size of the account, the activity in it and the obvious real beneficiary, is clear and convincing proof that the concern of the defendant, or at least its customer’s man, was commissions rather than profits.
The defendant would limit its liability to the commissions *774 “ earned The court, however, has a choice in a fraud action of the character of damages to be awarded (Stevens v. Abbott, Proctor & Paine, supra). In this case, where it may be fairly concluded that the capital of the account was dissipated for the benefit of the broker, the broker should restore the losses (Reno v. Bull, 226 N. Y. 546, 553). To only require restoration of commissions would encourage this conduct as low risk larceny (80 Harv. L. Rev. 869, 883, 885).
Judgment may be entered for the plaintiff against the defendant in the sum of $2,839.02, with interest from April 1, 1966, the earliest ascertainable date of loss available from the exhibits, no earlier date having been proved (CPLR 5001, subd. [b]; Gelco Bldrs. v. Simpson Factors Corp., 60 Misc 2d 492).