GORDON & CO., Inc., and Bradford Management and Research Corp.,
Plaintiffs,

v.

The BOARD OF GOVERNORS OF the FEDERAL RESERVE SYSTEM,
Defendant.

Civ. A. No. 70–661–J.

United States District Court,
D. Massachusetts.

Sept. 29, 1970.

Warren G. Miller, Boston, Mass., for Gordon & Co., Inc.

Charles E. Gennert, Boston, Mass., for Bradford Management and Research Corp.

Herbert F. Travers, Jr., U. S. Atty., Henry Hammond, Boston, Mass., Stuart E. Schiffer, Dept. of Justice, Bruce D. Shuter, Federal Reserve Board, Harold F. Leathers, Chief, General Litigation Section, Dept. of Justice, Washington, D. C., for defendant.

## COURT'S ACTION ON MOTIONS

JULIAN, District Judge.

This case was taken under advisement after hearing, and with briefs submitted, on several motions: (1) plaintiffs' motion for a preliminary injunction; (2) plaintiffs' motion for summary judgment; (3) defendant's motion to dismiss; and (4) defendant's motion for summary judgment.

The action is brought seeking a declaratory judgment that a promulgation of the Board of Governors of the Federal Reserve System ("The Board") is invalid. The following facts appear from the stipulation of the parties entered into for purposes of these motions. Plaintiffs are Massachusetts corporations which, prior to the Board's action, dealt exclusively in the purchase and sale of "in the money" and "deep in the money" put and call options on securities.

Puts and calls are common law option contracts employed in the securities industry. A call option is a negotiable instrument whereby the writer of the option, for a certain sum of money (the "premium"), grants to the buyer of the option the irrevocable right to demand, within a specified time, the delivery by the writer of a specified number of shares of a stock at a fixed price (the "exercise" or "striking" price). A put option is the other way around; that is, the buyer of the option may demand payment by the writer of a fixed price (the "striking" price) upon delivery by the buyer of a specified number of shares of a stock.

There are four basic types of put and call options: "at the market" options (when the striking price is the same as the market price), "out of the money" options (when the striking price is above the market price), "in the money" options (when the striking price is below the market price), and "special" options (options offered for resale when the market price of the securities which are the subject of the option has changed).

Options are transferable and may be exercised at any time; but, of course, all options lapse if not exercised before their expiration date. Generally speaking, options are written for periods of time which range from thirty to one hundred ninety days.

The premium for an option varies depending upon the price of the stock, its market volatility, the term of the option, the striking price in relation to the current market price, and the supply and demand.

On January 28, 1970, the Board issued and subsequently caused to be published in the Federal Register a document entitled "Deep in the money put and call options as extensions of credit." Basically, the Board concluded that "deep in the money" options "would involve extensions of credit by the writer as broker in an amount exceeding that permitted by the current supplement to Regulation T." 12 CFR § 220.122.

After negotiations proved fruitless, this litigation followed.

### Defendant's Motion to Dismiss

Defendant moved to dismiss, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, for two reasons: first, because the Court lacks subject matter jurisdiction, and, second, because the complaint fails to state a claim upon which relief can be granted. The thrust of the first reason is that there is no case or controversy presently existing, and consequently the matter is not ripe for adjudication. Defendant's position is that the Board's action is merely an interpretation of existing regulations, predicated upon a stated set of hypothetical facts. The defendant emphasizes that there is no new regulation or amendment, that no sanctions attach to the Board's interpretation, and that plaintiffs' fears of criminal prosecution arise from the statutory and regulatory scheme previously in effect.

Plaintiffs respond alternatively that the Board's action, appearing in the Code of Federal Regulations, is a regulation, not an interpretation, or, if interpretation, nevertheless final agency action subject to judicial review.

The Board's action appeared in the Federal Register under the section RULES AND REGULATIONS, and specifically stated that it "interprets and applies 15 U.S.C. § 78w." The latter provision is the enabling section empowering the Board "to make such rules and regulations as may be necessary for the execution of the functions vested in [it] * * *."

■ A person suffering legal wrong because of agency action is entitled to judicial review. 5 U.S.C. § 702. "Agency action" is defined as including an "agency rule," 5 U.S.C. § 551(13), and "rule" is defined as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, *interpret,* or prescribe law or policy * * *." 5 U.S.C. § 551(4). (Emphasis added.) .

■ A court should not restrict access to judicial review unless there is "clear and convincing evidence" of a contrary legislative intent. Abbott Laboratories v. Gardner, 1967, 387 U.S. 136, 141, 87 S.Ct. 1507, 18 L.Ed.2d 681. In this case, the Board points only to the possibility that a new proposal might be submitted, albeit by these plaintiffs, which would cause the Board to alter its position. It has pointed to no statutory authority restricting judicial review. Rather, it asserts lamely that the action was "informal," citing Helco Products Co., Inc. v. McNutt, 1943, 78 U.S.App. D.C. 71, 137 F.2d 681. In *Helco* the agency response to a request for an opinion was by radiogram; the present response was publication in the Federal Register. The two cases are readily distinguishable.

The recent thrust of Supreme Court cases has been to take a "flexible view of finality." Abbott Laboratories v. Gardner, 1967, 387 U.S. 136, 150, 87 S.Ct. 1507, 18 L.Ed.2d 681; *see* Gardner v. Toilet Goods Association, Inc., 1967, 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704; United States v. Storer Broadcasting Co., 1956, 351 U.S. 192, 76 S.Ct. 763, 100 L.Ed. 1081; Frozen Food Express v. United States, 1956, 351 U.S. 40, 76 S.Ct. 569, 100 L.Ed. 910; Columbia Broadcasting System v. United States, 1942, 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563. This case appears to fall within the ambit of the foregoing cases, especially *Abbott Laboratories* and *Toilet Goods.* Despite the fact that the Board concerned itself with the response to one set of circumstances, that response has marked applicability to other situations.

Certainly there can be no doubt that, since the Board's action, all "deep in the money" options which do not comply with present margin requirements are prohibited. As to these plaintiffs, there can be little doubt that the Board's action is "an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy * * *." 5 U.S.C. § 551(4) [definition of "rule"]. In the circumstances of this case the plaintiffs are adversely affected by the "agency action" (Indeed, if they violate the Board's decision they may be subject to criminal sanctions. See 15 U.S.C. § 78ff.), and should be entitled to judicial review.

Turning to the second prong of defendant's motion to dismiss, that is, that the complaint fails to state a claim upon which relief can be granted, the facts alleged in the complaint must be assumed to be established. United States v. New Wrinkle, Inc., 1952, 342 U.S. 371, 376, 72 S.Ct. 350, 96 L.Ed. 417. Based upon these allegations, no credit is extended by the writer of "deep in the money" options and so the Board's action exceeds its authority to regulate the extension of credit. 15 U.S.C. § 78g(a).

*Plaintiffs' and Defendant's Motions for Summary Judgment*

Unless it is shown that there is no genuine issue as to any material fact, then, of course, both motions must be denied. Fed.R.Civ.P. 56(a). In this litigation the most central facts are controverted. Plaintiffs assert that most "deep in the money" options are not exercised. Supplemental Affidavit of Michael B. Salke, page 2. Defendant, on the other hand, is operating on the assumption that, as a practical matter, these options will always be exercised. Affidavit of Robert C. Holland, pars. 24–29.

Resolution of this conflict is crucial to plaintiffs' case and to the validity of the Board's action. Whether credit is, in effect, being extended by "deep in the money" options—which would subject the area to the jurisdiction of the Board—depends upon whether the options are normally exercised. At this juncture that fact is disputed.

*Plaintiffs' Motion for a Preliminary Injunction*

To obtain this equitable remedy, plaintiffs must demonstrate that they will probably prevail on the merits and that, absent such relief, they will suffer irreparable injury. Automatic Radio Mfg. Co. v. Ford Motor Co., 1968, 1 Cir., 390 F.2d 113, cert. denied, 391 U.S. 914, 88 S.Ct. 1807, 20 L.Ed.2d 653; Cuneo Press of New England v. Watson, 1968, D.Mass., 293 F.Supp. 112.

Plaintiffs have failed to establish the probability that they will ultimately prevail upon the merits. By counsel for plaintiff Bradford's own admissions, "As a practical matter, it is anticipated that the customer will exercise the option in almost every case." 12 CFR § 220.122. Stipulation, Exh. C. It is a fair inference that a 30-day option, with the "striking" price 30% below the market price, will normally be exercised, especially since the buyer of the option must pay as part of the premium 30% of the market price. Realism dictates the conclusion that credit is being extended. Since the Board is empowered to regulate the extension of credit, then its January 28, 1970 action is within its statutory authority.

Plaintiffs' remaining arguments, that the ruling unconstitutionally discriminates, that it is unconstitutionally vague, and that the Board failed to comply with the Administrative Procedure Act, are not likely to prevail. First, the reason for distinguishing between "deep in the money" options and all others is that the former contemplates in most cases purchase of the stock. Second, the vagueness, if any, can be cured by submitting a proposal to the Board. Indeed, one such letter was already acted upon. Stipulation, Exhs. D, E, and F. On plaintiffs' final contention, that the Board failed to give notice and otherwise com-

ply with the Administrative Procedure Act, there is no sufficient showing that the Board needed to comply with those requirements before taking this type of action.

Defendant's motions to dismiss and for summary judgment are denied.

Plaintiffs' motions for summary judgment and for a preliminary injunction are also denied.