Robert P. BIGGANS

v.

**BACHE HALSEY STUART SHIELDS, INC. f/t/a Bache Halsey Stuart, Inc.**

Civ. A. No. 79–758.

United States District Court, E. D. Pennsylvania.

Jan. 14, 1980.

Paul Breen, Philadelphia, Pa., for plaintiff.

Abraham C. Reich, Charles M. Solomon, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for defendant.

## MEMORANDUM

CAHN, District Judge.

Before the court is defendant's motion for summary judgment. Plaintiff brings this action for securities fraud, alleging that defendant's registered representative engaged in excessive trading or "churning" of plaintiff's account in the purchase and sale of "call" options between June of 1975 through October of 1976.[1] The claims are based upon § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated thereunder by the Securities Exchange Commission, as well as § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a). Jurisdiction is invoked under § 27 of the Securities Exchange Act, 15 U.S.C. § 78aa.

Plaintiff filed his complaint on February 28, 1979. In June of 1975, plaintiff owned various amounts of two stocks which were turned over to defendant's agent for the

---

1. A "call" option is a contract given for an agreed premium, entitling the holder, at his option, to buy on or before a fixed date a specific number of shares of stock at a predetermined price. *Gordon & Co. v. Board of Governors of Fed. Reserve System*, 317 F.Supp. 1045, 1046 (D.Mass.1970).

purpose of liquidating and reinvesting. The sale of stock generated approximately $6,500 which was initially reinvested in stock and later reinvested in various call options. Plaintiff claims that the defendant by failing to control its agent and failing to learn or to understand the investment needs of the plaintiff aided and abetted the agent who in bad faith "churned" customer's account with the fraudulent purpose of deriving a profit for himself and defendant.[2] He claims that this deception was in violation of the aforementioned statutes and rules.

Defendant argues that plaintiff's claims are time barred. The federal statute provides no statute of limitations for an action under 10b–5. Therefore I must look to state law for an analogous statute of limitations. *Ernst and Ernst v. Hochfelder*, 425 U.S. 185, 210 n. 29, 96 S.Ct. 1375, 1389 n. 29, 47 L.Ed.2d 668 (1976). A legal issue before the court is whether to apply the three year statute of limitations under the Pennsylvania "Blue Sky" Law or the six year statute of limitations applicable to common law fraud in Pennsylvania.

■ In *Frankel v. Schmertz*, No. 74–1695 (E.D.Pa. March 18, 1976), I held the Pennsylvania Blue Sky law was the analogous cause of action to a 10b–5 action, and thus the Blue Sky law statute of limitations was applicable. I believe it is still the most closely analogous state cause of action which "best effectuates the Federal policy involved." *Abetti, et al. v. Sheftel, et al.*, No. 78–4269 (E.D.Pa. Nov. 21, 1979, Hannum, J.).

Plaintiff argues that the recent decision of the Court of Appeals for the Third Circuit in *Roberts v. Magnetic Metals Company*, 611 F.2d 450 (3d Cir. 1979), requires this court to apply the statute of limitations applicable to common law fraud. The *Roberts* case held that in New Jersey, common law fraud is more closely analogous to a seller's cause of action under 10b–5. The opinions of Judge Gibbons and Judge Sloviter, which constituted the majority in the *Roberts* case, emphasized the fact that the New Jersey Blue Sky law provided no cause of action for sellers. Sellers were relegated to common law fraud actions.

The *Roberts* case reinforces my holding that in Pennsylvania, the statute of limitations under the Blue Sky law applies to this action. Unlike the limited New Jersey statute, the Pennsylvania Securities Act is broadly written to prohibit the type of actions complained of here. The Pennsylvania law covers a scope of activities analogous to those covered by 10b–5. *See* 70 Pa.Cons.Stat.Ann. §§ 1–403, 1–404, 1–401.

■ The crucial question to be answered in order to determine whether plaintiff's claims are time barred is when plaintiff received "actual notice or upon the exercise of reasonable diligence should have known of the facts constituting the violation."[3] If plaintiff had actual notice or should have known of the facts before February 28, 1978, then he is time barred in this suit.

Plaintiff testified in his deposition that he received a confirmation slip after each purchase or sale of the call options and that he received monthly statements detailing all transactions which took place during that month. Biggans Deposition at 19–20. Receipt of these items without more in the case of an inexperienced investor might not estop him from claiming that he didn't have

---

**2.** "Churning . . . has to do not with single transactions, but with the volume and frequency of a series of transactions . . . . The test . . . is whether under the circumstances the trading in the account has been 'excessive'." *Hecht v. Harris Upham & Co.*, 283 F.Supp. 417, 437 (N.D.Cal.1968), *modified in part*, 430 F.2d 1202 (9th Cir. 1970).

**3.** Section 1–504(a), 70 Pa.Cons.Stat.Ann. § 1–504(a), of the Pennsylvania Securities Act provides:

No action shall be maintained to enforce any liability . . . unless brought before the expiration of three years after the act or transaction constituting the violation or the expiration of one year after the plaintiff receives actual notice or upon the exercise of reasonable diligence should have known of the facts constituting the violation, whichever shall first expire.

the requisite notice of churning. *Hecht v. Harris Upham & Co.*, 283 F.Supp. 417 (N.D. Cal.1968), *modified in part,* 430 F.2d 1202 (9th Cir. 1970). However, plaintiff also testified that in 1977 his accountant after reviewing with plaintiff his investment transactions for purposes of filing any losses on his 1976 income tax return suggested that "something looks funny." Biggans Deposition at 21. Plaintiff testified that the accountant told him, when discussing his brokerage account,

> That doesn't all make sense, and it looks like there's just a lot of, you know, a lot of commissions were generated here . . . it looked like there was a lot of, you know, activity in the account, . . . get an attorney; someone who's knowledgeable on this and we'll find out.

Biggans Deposition at 25.

When an investor is advised by his accountant that he should get an attorney, and that something irregular is going on in his brokerage account, he is not only on notice of the facts constituting a violation, but that a possible legal action exists. Under any standard of diligence that could be applied, direct counseling such as plaintiff received from his accountant put plaintiff on notice of a possible churning violation. *Mittendorf v. J. R. Williston & Beane, Inc.*, 372 F.Supp. 821, 832 (S.D.N.Y.1977).[4]

In conclusion, I find that plaintiff's claims are time barred, and therefore, I grant defendant's motion for summary judgment.

---

4. Discovery of a violation is to be determined by the use of an objective standard; that is " 'discovery' means either actual knowledge or notice of facts which, in the exercise of due diligence, would have led to actual knowledge of the violation." *Goldenberg v. Bache & Co.*, 270 F.2d 675 (5th Cir. 1959). *See Hecht v. Harris Upham & Co.*, 283 F.Supp. 417 (N.D.Cal. 1968), *modified in part,* 430 F.2d 1202 (9th Cir. 1970). *See also United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979).