Robert P. **BIGGANS**, Appellant,

v.

**BACHE HALSEY STUART SHIELDS, INC.**, f/t/a Bache Halsey Stuart, Inc.

No. 80–1281.

United States Court of Appeals, Third Circuit.

Submitted under Third Circuit Rule 12(6) Sept. 18, 1980.

Decided Dec. 31, 1980.

Rehearing In Banc Rehearing Denied Jan. 22, 1981.

---

Paul Breen, Philadelphia, Pa., for appellant.

Abraham C. Reich and Charles M. Solomon, Philadelphia, Pa., for appellee; Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., of counsel.

Before GIBBONS, WEIS and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

The issue on appeal is whether a suit claiming damages from a brokerage house for "churning", or excessive trading of a customer's account, in violation of the federal securities laws is governed by the statute of limitations applicable to actions brought under the Pennsylvania Securities Act or applicable to common law fraud actions. We hold that the limitations period applied to fraud actions is controlling.

### I.

Robert P. Biggans, appellant, opened a discretionary trading account with Bache Halsey Stuart Shields, Inc. (Bache) in June 1975. Accepting his version of the facts, since we must give him the benefits of all reasonable inferences in reviewing a summary judgment against him, he entrusted $6,500 to defendant Bache to invest and manage. During the 17 month period from June 1975 to October 1976, defendant, through its agent, made approximately 300 purchases and sales of call options; purchases during that period were over $250,000 and sales were close to that amount. Plaintiff lost $5,905.37 while defendant's commission from the activity was $23,355.30. Plaintiff claims that this excessive trading by his account executive was done only to create commissions for the defendant in violation of a duty to act in plain-

tiff's best interest. He claims that this activity constituted churning, which occurs when a broker abuses a customer's trust and confidence for personal gain by inducing transactions in the customer's account that are excessive in size or frequency in view of the financial resources and character of the account, and that it violated section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1976), Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5 (1979), and § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a) (1976). The last transaction in question occurred on October 31, 1976. The complaint was filed on February 28, 1979.

■ Defendant moved for summary judgment on the ground that the action was time-barred. The district court recognized that the absence of a federal statute expressly providing a period of limitations for private actions based on section 10(b) of the Securities Exchange Act required selection of an appropriate limitations period from the law of Pennsylvania, the forum state. The court considered two options: the one-year statute of limitations governing civil actions brought pursuant to section 501 of the Pennsylvania Securities Act, Pa. Stat.Ann. tit. 70, § 1–501 (Purdon Supp. 1980),[1] or the longer statute applicable to actions for common law fraud and breach of fiduciary duty.[2] Reasoning that the Pennsylvania Securities Act rather than Pennsylvania's common law provided a cause of action more closely analogous to a cause of action based on section 10(b), the court held that the one-year statute was the proper choice. The court found as a matter of law that Biggans filed his suit more than one year after he knew, or exercising reasonable diligence should have known, of the alleged fraud, and granted Bache's motion for summary judgment.[3] *Biggans v. Bache*

1. Section 504(a) of the Pennsylvania Securities Act, Pa.Stat.Ann. tit. 70, § 1–504(a) (Purdon Supp.1980), provides in relevant part:
   No action shall be maintained to enforce any liability created under section 501 . . . unless brought before the expiration of three years after the act or transaction constituting the violation or the expiration of one year after the plaintiff receives actual notice or upon the exercise of reasonable diligence should have known of the facts constituting the violation, whichever shall first expire.

2. Prior to June 27, 1978 the statute of limitations for a common law fraud action was six years. Pa.Stat.Ann. tit. 12, § 31 (Purdon 1953); *Home Life Ins. Co. v. Greenspan*, 360 Pa. 542, 63 A.2d 72 (1949); *Flach v. Integrity Trust Co.*, 134 Pa.Super. 456, 4 A.2d 212 (1939). On June 27, 1978, the Judiciary Act of 1976, which created the Judicial Code, became effective. The Code repealed various statutes of limitation, including Pa.Stat.Ann. tit. 12, § 31, and established a new limitations scheme. See Act of July 9, 1976, Act No. 142, 1976 Pa.Laws 586 (codified at 42 Pa.Cons.Stat. §§ 5521–5536 (1978)). Under the new scheme, it is unclear whether the two-year period applicable to actions for "taking, detaining or injuring personal property . . . ." *id.* § 5524(3) or the six-year catch-all provision, *id.* § 5527(6), applies to an action based on common law fraud. *See* Comment, Securities Regulation: Statute of Limitations Applicable to 10b–5 Actions Arising in Pennsylvania, 53 Temp.L.Q. 70, 81 (1980) (hereafter cited as Temple Comment). We need not decide that issue because it would not make a difference under the circumstances presented here. If the six-year catch-all provision applies, the limitations period is the same under both the old and new statutes. Even if the two-year statute is generally applicable to fraud actions it would be inapplicable in this case because of the operation of the transition section, section 25(a) of the Code, which provides:
   Any civil action or proceeding:
   (1) the time heretofore limited by statute for the commencement of which is reduced by any provision of this act; and
   (2) which is not fully barred by statute on the day prior to the effective date of this act; may be commenced within one year after the effective date of this act, or within the period heretofore limited by statute, whichever is less, notwithstanding any provisions of . . . Chapter 55 of Title 42 . . . .
   42 Pa.Cons.Stat.App. § 25(a) (1978). Since Biggans commenced his action on February 28, 1979, within one year of the effective date of the Code and within six years of the fraud, it would appear that his action was timely commenced under the fraud limitations period.

3. The district court assumed that, if the Pennsylvania Securities Act limitations period controlled, it must apply the prong of that statute which limits the period of suit to one year after the date plaintiff knew, or should have known, of the violation. Although state law provides the limitations period, federal law determines when the period commences to run. *E. g. Hudak v. Economic Research Analysts, Inc.*, 499

*Halsey Stuart Shields, Inc.*, 487 F.Supp. 829 (E.D.Pa.1980).

On appeal, appellant argues that the district court's choice of statute of limitations is inconsistent with our recent decision in *Roberts v. Magnetic Metals Co.*, 611 F.2d 450 (3d Cir. 1979). We agree.

In *Roberts*, this court faced for the first time the issue of the appropriate state statute of limitations to apply in federal securities suits, an issue which has divided the circuits.[4] The suit, which was brought by a selling shareholder against the corporation, its merger partner, and their broker agent, alleged defendants violated sections 10(b) and 14(a) of the Securities Exchange Act by making material misrepresentations and omissions in connection with the solicitation of shareholder approval of a merger. The court held, with one dissent, that the suit was governed by the six-year statute of limitations which New Jersey applied to actions for common law fraud, and not by the two-year statute provided in New Jersey's version of the Uniform Securities Act. Judge Gibbons and I, comprising the majority, wrote separate opinions. Judge Gibbons stated that the absence of a federal statute of limitations required that in federal securities litigation, we give deference to the policy of repose of the forum state. If the state court would entertain an action for the relief sought, no state policy of repose was implicated. The relevant inquiry under his analysis was whether the lawsuit would be time-barred if brought in state court. My approach differed in that I stressed the need to identify the state statute of limitations which best comports with the federal substantive policy advanced by the federal cause of action. We need not here speculate as to whether the divergence in our approach might, in some factual situation, lead us to different results. Indeed, Judge Gibbons expressly noted that he did not disagree with my approach. *Id.* at 456. Chief Judge Seitz, writing in dissent, also agreed that the court must choose the state statute of limitations which best effectuated federal policy, *id.* at 460–61, although he disagreed with our selection.

Whatever the difference in perspectives used by Judge Gibbons and me, we examined the same factors in reaching agreement that the limitations period of the state securities statute was inapplicable. Chief among those factors was that New Jersey's securities statute, like the Uniform Securities Act, did not provide a civil remedy for sellers against fraudulent buyers. The federal plaintiff, if relegated to his state cause of action, would therefore have been limited to a suit for common law fraud, an action which could have been maintained within the time in question. For Judge Gibbons, the absence of state statutory protection to sellers or tenderers of securities meant that the state statute could hardly be considered the analogous reference point. I agreed with the importance of that factor, also concluding that the state securities law intended to supplement the body of com-

---

F.2d 996 (5th Cir. 1974), *cert. denied,* 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 821 (1975). Under the federal equitable tolling doctrine the statute does not begin to run until the plaintiff knew or exercising reasonable diligence should have known of the alleged fraud. *E. g. McNeal v. Paine, Webber, Jackson & Curtis, Inc.*, 598 F.2d 888, 893 n.11 (5th Cir. 1979); *Cook v. Avien, Inc.*, 573 F.2d 685, 694 (1st Cir. 1978). The district court apparently did not consider whether the federal equitable tolling doctrine required applying the other prong of the Pennsylvania statute which provides that suit must be brought in any event no later than the expiration of three years from the date of the transaction at issue. *See* note 1, *supra*. Arguably, a state statute which has its own tolling provision, such as Pennsylvania's, cannot limit application of the federal equitable tolling doctrine which, in the absence of the state tolling provision, would operate to give plaintiff a longer rather than a shorter period in which to sue. *Cf. United Cal. Bank v. Salik*, 481 F.2d 1012, 1015 (9th Cir.), *cert. denied,* 414 U.S. 1004, 94 S.Ct. 361, 38 L.Ed.2d 240 (1973). Apparently, no court has construed a statute similar to Pennsylvania's in this way. *See* discussion in Temple Comment, *supra* note 2, at 83–86. Appellant has not raised this issue on appeal, and in light of our disposition of this case, it is not necessary for us to decide this knotty issue.

4. Judge Gibbons' opinion in the *Roberts* case fully reviewed the relevant precedent, and there is no need to repeat that analysis here. *See* 611 F.2d at 454–55.

mon law permitting sellers to sue fraudulent buyers.

The district court in this case recognized that both of the opinions constituting the majority in the *Roberts* case emphasized the fact that the New Jersey Blue Sky law provided no cause of action for sellers, relegating sellers to common law fraud actions. The court held, however, that *Roberts* was distinguishable because, "[u]nlike the limited New Jersey statute, the Pennsylvania Securities Act is broadly written to prohibit the type of actions complained of here. The Pennsylvania law covers a scope of activities analogous to those covered by 10b–5. *See* 70 Pa.Cons.Stat.Ann. §§ 1–403, 1–404, 1–401." 487 F.Supp. at 830.

The Pennsylvania statutory provisions cited by the district court appear to encompass churning within the activities proscribed. Section 401, Pa.Stat.Ann. tit. 70, § 1–401 (Purdon Supp.1980), which is modeled on Rule 10b–5, makes it unlawful for any person to employ, *inter alia*, any device, scheme or artifice to defraud. Section 403 makes it unlawful for a broker-dealer to "effect any transaction in, or induce or attempt to induce the purchase or sale of, any security ... by means of any manipulative, deceptive or other fraudulent scheme ...." *Id.*, § 1–403. Section 404 makes it unlawful for any investment adviser "[t]o employ any device, scheme, or artifice to defraud any client or prospective client." *Id.*, § 1–404.

There are no Pennsylvania cases which have had occasion to consider whether churning falls within these provisions,[5] but the Pennsylvania Securities Commission, pursuant to section 609 of the Act, *id.*, § 1–609, has promulgated regulations which interpret section 403 as outlawing churning. *See* 64 Pa.Code § 403.010(d) (1980). This comports with the action of the Securities Exchange Commission which has interpreted the language "manipulative, deceptive, or other fraudulent device or contrivance" as used in section 15(c) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(c)

(1976) to include churning. 17 C.F.R. § 240.15c1–7 (1979). There is substantial federal case authority that churning is illegal as a deceptive device under section 10(b) of the Securities Exchange Act of 1934, and Rule 10b–5. *See, e. g., Newburger, Loeb & Co., Inc. v. Gross*, 563 F.2d 1057, 1069 (2d Cir. 1977), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978) (and cases cited therein).

Bache argues that because the claims asserted by Biggans would be encompassed within the Pennsylvania Securities Act, the statute of limitations provided in that Act governs. That is apparently the reasoning adopted by the district court. The difficulty with Bache's argument is that it neglects the significant fact that the Pennsylvania Securities Act provides no cause of action for damages to Biggans or to an investor in his situation. Assuming the Pennsylvania statute proscribes churning, such activity can be the subject of an injunction action brought by the Pennsylvania Securities Commission, Pa.Stat.Ann. tit. 70, § 1–509, or can subject Bache to criminal penalties, *id.*, § 1–511. It is clear, however, that the statute does not give Biggans the right to sue Bache for damages.

The *sole* source of *civil* liability for any acts in violation of sections 401, 403 and 404 of the Pennsylvania Securities Act, *see* Pa.Stat.Ann. tit. 70, § 1–506, is found in section 501, which provides in relevant part:

(a) Any person who ... offers or sells a security in violation of sections 401, 403, 404 or otherwise by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading ... *shall be liable to the person purchasing the security from him ....*

(b) Any person who purchases a security in violation of sections 401, 403, 404 or otherwise by means of any untrue statement of a material fact or any omission

to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, *shall be liable to the person selling the security to him* . . . .

*Id.* § 1–501 (emphasis added).

Although, as appellees point out, the section gives a cause of action to defrauded sellers and buyers, it only gives the seller or buyer the right to sue the person purchasing or selling the security. Biggans is suing his broker, not the individuals who purchased the securities that his broker sold for him or those who sold the securities that his broker bought for him. Furthermore, the relief provided by the statute for injured parties, which is limited essentially to rescission, would be unavailing in a suit against a broker for churning. *See, McNeal v. Paine, Webber, Jackson & Curtis, Inc.,* 598 F.2d 888 (5th Cir. 1979). Hence, as in *Roberts,* the state securities act is wholly inapplicable to Biggans' claim for damages. There, as here, the defendants' acts were the subject of potential injunctive and criminal action, *see* N.J.S.A. 49:3–52, 3–69, 3–70, but were not the predicate upon which a private claim could be based.

On the other hand, as in the *Roberts* case, it appears that Biggans' allegations would state a claim for fraud and breach of fiduciary duty under Pennsylvania common law. Although the parties have referred us to no Pennsylvania case on point, there are cases in other jurisdictions which have classified churning as fraud or breach of fiduciary duty. *See Pierce v. Richard Ellis & Co.,* 62 Misc.2d 771, 310 N.Y.S.2d 266 (Civ.Ct.N.Y. 1970); *Twomey v. Mitchum, Jones & Templeton, Inc.,* 262 Cal.App.2d 690, 69 Cal. Rptr. 222 (Ct.App.1968). *See also Knieriemen v. Bache Halsey Stuart Shields, Inc.,* 74 App.Div.2d 290, 427 N.Y.S.2d 10, 15 (Murphy, J., concurring), appeal dismissed, 50 N.Y.2d 1021, 431 N.Y.S.2d 812, 410 N.E.2d 745 (1980); *Hayden, Stone Inc. v. Brown,* 218 So.2d 230 (Fla.Dist.Ct.App.), *cert. denied,* 225 So.2d 539 (Fla.1969). Pennsylvania's imposition of a high standard of fiduciary responsibility on persons acting as brokers bodes a similar result. *See, e. g. Claughton v. Bear, Stearns & Co.,* 397 Pa. 480, 156 A.2d 314 (1959); *Butcher v. Newburger,* 318 Pa. 547, 179 A. 240 (1935); *Vollmer v. Newburger,* 277 Pa. 282, 121 A. 56 (1923). Furthermore, the Pennsylvania Securities Act expressly states that the remedies provided there are not exclusive. Section 506 provides "[n]othing in this act shall limit any liability which might exist by virtue of any other statute or under common law . . . ." Pa.Stat.Ann. tit. 70, § 1–506.

■ We therefore conclude that the reasoning which underlay the decision of this court to apply the New Jersey common law fraud statute of limitations in *Roberts* compels a similar result in this case. Where the state Blue Sky law does not provide the plaintiff with a cause of action ·for the relief requested, but common law does, and where the state legislature framed its statute to supplement, rather than supplant, available common law remedies, it is the common law limitations period which must be applied in federal securities actions.

■ Our decision is in agreement with that of the other court of appeals which recently considered the appropriate statute of limitations to apply when an action for churning is brought under section 10(b) of the Securities Exchange Act of 1934. In *McNeal v. Paine, Webber, Jackson & Curtis, Inc.,* 598 F.2d 888 (5th Cir. 1979), the Fifth Circuit concluded, as we do, that the common law fraud limitations period should govern. The court there noted that although the language of section 11 of the Georgia Securities Act of 1957 mimics that of Rule 10b–5, the remedy under the state statute is expressly limited to an action for rescission by a purchaser against a seller. In contrast, the court noted that Georgia's general fraud statute would support an action for money damages based on the churning of a customer's account. Therefore, it was the latter statute rather than the state securities act which was held to more closely resemble the cause of action under section 10(b).

In light of our holding that Pennsylvania's statute of limitations applicable to common law fraud cases should be applied in this case, it is unnecessary to consider appellant's second contention that the district court erred in granting summary judgment on the issue as to when plaintiff became or should have become aware of the defendant's violations.

For the reasons set forth above, we will vacate the summary judgment and remand for further proceedings not inconsistent with this opinion.

WEIS, Circuit Judge, dissenting.

By its very nature a statute of limitations is arbitrary. It provides a cut-off, embodying a legislative policy decision when a person may be barred from a legal remedy. *Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945). Because of this preclusive effect, it is important that the public know in advance when the limitations period expires.

It is regrettable that no time has been fixed in the Securities Act for Section 10(b) suits, but it is understandable since the private cause of action was a judicial engraftment on the statute. Having created the remedy, the judiciary must now fill the interstices and provide for such matters as the appropriate limitation period.

In discussing this issue, many courts unfortunately have lost sight of the importance of notice. They have undertaken involved color matching of the federal statute with state Blue Sky laws, discussed which remedy is appropriate, in what circumstances, and have engaged in such esoteric discussions as whether the state laws require scienter.[1] Indeed, in some cases, the statute of limitations issue—which should be a brief, preliminary inquiry—receives more attention than the merits of the controversy itself.

I realize that pitfalls may lurk in a simplistic approach, but at least some effort should be undertaken to make the search for the applicable period quick and direct. The route the majority takes arguably heads in that direction, but I fear still unduly complicates the matter. Following its opinion in *Roberts v. Magnetic Metals Co.*, 611 F.2d 450 (3d Cir. 1979), the majority looks first to see what causes of action are available to a plaintiff under state law, and then determines what state statute of limitations would apply. But such detail is unnecessary.

The limitation period for a federal remedy is best found by looking to an analogous state remedy, not an exact duplicate. *See Capos v. Mid-America National Bank*, 581 F.2d 677, 680 (7th Cir. 1978).

Chief Judge Seitz, dissenting in *Roberts*, would simply look to the state's statute that addresses the same regulatory area—in this case securities transactions—and apply that limitation if it best effectuates federal policy. 611 F.2d at 461. This approach is more consistent with the majority of circuits, where a "commonality of purpose" test is applied to determine the appropriate statute of limitations. *See Morris v. Stifel, Nicolaus & Co.*, 600 F.2d 139, 145 (8th Cir. 1979), and cases cited therein. Under such an analysis, the same or similar policy considerations are emphasized, rather than focusing on specific points of distinction, *O'Hara v. Kovens*, 625 F.2d 15, 18 (4th Cir. 1980), as the majority's opinion here tends to do.

Following the approach I advocate would make this a simple case. Pennsylvania has adopted a comprehensive Securities Act, Pa. Stat.Ann. tit. 70, §§ 1–101 to–704 (Purdon Supp.1980), which regulates the same area as the Securities Act of 1933 and indeed the very conduct involved in the case at bar.[2] The Pennsylvania Act has a one year statute of limitations, Pa.Stat.Ann. tit. 70, § 1–501 (Purdon Supp.1980), which corresponds to the shorter periods favored in the

---

1. *See, e. g.*, Comment, Statute of Limitations Applicable to 10b–5 Actions Arising in Pennsylvania, 53 Temp.L.Q. 70 (1980).

2. *Compare* 64 Pa.Code § 403.010(d) (1980) *with* 17 C.F.R. § 240.15c1–7 (1980).

federal Act, 15 U.S.C. §§ 78i(c), 78p(b), 78r(c), 78cc(b) (1976). Because the federal and state statutes express parallel policies, I see no need to proceed any further, and would apply the state one year statute of limitations to the federal claim as did the district judge.

The majority, however, goes on to a more detailed analysis. Although concluding that defendant's alleged conduct is within the scope of the state statute, my colleagues nevertheless decide that plaintiff would have no right to recover damages under the state Act, and therefore apply the limitation of the catch-all general fraud statute. As I understand the majority approach, if the plaintiff had not alleged churning, but had based his claim on a sale to or purchase from another, then the one year limitation of the state securities law would apply. This result follows because there is specific authorization in the Pennsylvania statute for such a private right of action. Even though both suits would be brought under Section 10(b), therefore, one would have to be filed within one year—the other within two or six years. This continues the pattern of inconsistency begun in *Roberts*, where a seller of securities in New Jersey has six years to bring his suit under § 10(b), but a buyer presumably has only two years under the same statute. Thus, under this court's construction, no uniform statute of limitations for all Section 10(b) cases exists even within the same state.

Nor am I persuaded by the majority's conclusion that the plaintiff would not have a right to recover damages under the Pennsylvania statute. I agree with their conclusion that churning is prohibited by the state statute, and believe that possibly it would authorize a private cause of action similar to the one here.

The record does not disclose if the plaintiff bought some of the securities from the defendant. If he did, the Act specifically provides a remedy for damages. Moreover, the statute in § 1–501(a) and (b) imposes liability on "any person" who violates §§ 1–403 or 404, which explicitly treat conduct of broker-dealers and investment ad-

visors. Arguably the statute might be construed by the Pennsylvania Supreme Court to provide a private remedy for "churning." This question has never been presented to the state courts and therefore the majority's position is necessarily a prediction rather than a statement of state law.

The fact that the majority approach depends upon a detailed analysis of the underlying facts in the case at hand, as well as an uncertain prediction of state statutory interpretation, reveals the difficulties with utilizing an "exact match" approach. I believe that it would be far preferable in a suit under § 10(b) of the Securities Act to look to the statute of limitations of the state's Blue Sky law. It not only furnishes a guidepost to the public, but gives some certainty to what is now a confused and inconsistent body of law.

I would affirm the judgment of the district court.