Edward D. GING, et ux., et al., Plaintiffs,

v.

PARKER–HUNTER INCORPORATED, a corporation, Defendant.

S. M. MIHALKE, et ux., Plaintiffs,

v.

PARKER–HUNTER INCORPORATED, a corporation, Defendant.

T. Roger ENTRESS et al., Plaintiffs,

v.

PARKER–HUNTER INCORPORATED, a corporation, Defendant.

Jack A. SCOTT, et al., Plaintiffs,

v.

PARKER–HUNTER INCORPORATED, a corporation, Defendant.

Civ. A. Nos. 79–489, 79–1606, 80–485 and 80–511.

United States District Court, W. D. Pennsylvania.

July 16, 1982.

Anthony P. Picadio, Pittsburgh, Pa., for plaintiffs.

James D. Morton, Pittsburgh, Pa., for defendant.

## OPINION

DIAMOND, District Judge.

The defendant in these consolidated cases has filed motions to stay plaintiffs' pendent state claims, to strike plaintiffs' claims for punitive damages, and for summary judgment on statute-of-limitations grounds. The plaintiffs have filed cross-motions to strike the statute-of-limitations defense and for summary judgment as to the defendant's counterclaim for indemnification. For the reasons set forth below, the court: (1) will deny the defendant's motions for summary judgment on the statute-of-limitations defense and, accordingly, grant the plaintiffs' cross-motions to strike that defense, (2) will grant the plaintiffs' motions to strike the defendant's claims for indemnification, and (3) will grant in part and deny in part the defendant's motions to stay the pendent state claims and to strike the plaintiffs' claims for punitive damages.

## BACKGROUND

The plaintiffs in each of these cases sought financial advice from one Herbert Otto who, during the pertinent time period rented office space from the defendant, a licensed securities dealer, and represented that he had a special relationship with the defendant. Otto represented to the plaintiffs that he had devised a failsafe system for trading in IBM options, and he encouraged the plaintiffs to set up discretionary trading accounts with the defendant which he then would manage. Otto guaranteed a

return on plaintiffs' investment of twenty percent per year, but instead of the promised gain, plaintiffs lost considerable amounts of money for the recovery of which these suits were instituted.

All plaintiffs are represented by the same counsel and have filed similar complaints alleging, in addition to a number of pendent state claims, violations of § 10(b) of the Security Exchange Act of 1934 (Exchange Act), 15 U.S.C. § 78j(b), and of Rule 10b–5, 17 C.F.R. 240.10b–5, promulgated under § 10(b) of that act. The defendant has moved for summary judgment in all cases except the *Scott* case on the ground that they are time-barred. The parties agree that under the facts of these cases if a six-year limitation period applies, the suits are timely, but if a two-year period is applicable, they can only be saved by the federal tolling doctrine.

## I. STATUTE OF LIMITATIONS

█ Congress did not provide a specific time period within which a claim under § 10(b) of the Exchange Act 1934 must be brought. As a result, the court must determine the applicable federal statute of limitations. *Johnson v. Railway Express Agency*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *Cope v. Anderson*, 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602 (1947). And, further, in the absence of an express Congressional choice of a limitations period, the court must presume that Congress chose to defer to each forum state's policies of repose rather than to have national uniformity. *United Parcel Service v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981); *Johnson, supra.* Therefore, the court must "determine which limitations period is 'the most appropriate one provided by state law.' *Johnson v. Railway Express Agency*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975). This depends upon an examination of the nature of the federal claim and the federal policies involved. *See [United Auto Workers v.] Hoosier Cardinal [Corporation]*, [383 U.S. 696,] 706–707, [86 S.Ct. 1107, at 1113–14, 16 L.Ed.2d 192 (1966)]." *United Parcel Ser-*

*vice, supra,* 451 U.S. at 60–1, 101 S.Ct. at 1563.

On two occasions the federal policies embodied in section 10(b) and Rule 10(b)(5) have been analyzed by the Third Circuit in light of the appropriate Pennsylvania statute of limitations. *See Biggans v. Bache Halsey Stuart Shields, Inc.*, 638 F.2d 605 (3rd Cir. 1980); *Roberts v. Magnetic Metals Co.*, 611 F.2d 450 (3rd Cir. 1979). In *Biggans*, this circuit considered the choice between the statute of limitations under the Pennsylvania Securities Act (sometimes PSA) and the limitations period applicable to Pennsylvania common-law fraud. *Biggans* is indistinguishable from the cases *sub judice*, and is therefore controlling in the disposition of the parties' cross-motions on the statute-of-limitations issue.

In *Biggans*, an investor brought suit against Bache Halsey Stuart Shields, Inc., a stock brokerage firm with which the investor had opened a discretionary trading account. The investor alleged that Bache had made numerous trading transactions on his account not for the authorized and legitimate purpose of increasing the value of his account with Bache, but for the improper purpose of generating sales commissions for the benefit of Bache. The investor charged that this "churning" of transactions was a manipulative stock practice prohibited by section 10(b) and Rule 10b–5. The district court adopted the limitations period provided for in the Pennsylvania Securities Act, and held that the suit was time-barred.

In reversing the district court, the Third Circuit stated:

Bache argues that because the claims asserted by Biggans would be encompassed within the Pennsylvania Securities Act, the statute of limitations provided in that Act governs. That is apparently the reasoning adopted by the district court. The difficulty with Bache's argument is that it neglects the *significant fact that the Pennsylvania Securities Act provides no cause of action for damages* to Biggans or to an investor in his situation. Assuming the Pennsylvania statute proscribes churning, such activity can be the

subject of an injunction action brought by the Pennsylvania Securities Commission, Pa.Stat.Ann. tit. 70, § 1–509, or can subject Bache to criminal penalties, *id.*, § 1–511. It is clear, however, that the statute does not give Biggans the *right to sue Bache for damages. Biggans, supra* at 609. (emphasis added)

The *Biggans* court noted that the PSA provides only limited remedies to a buyer or seller of securities. A complaining buyer or seller, if he still holds the security, may obtain recision plus interest from the date of the alleged unlawful transaction less any income the complainant earned on the security. 70 Pa.C.S.A. § 1–501(a)(b) (1981). As an alternative to recision, a buyer can seek damages from the seller in an amount equal to the purchase price minus the value the buyer received when he disposed of the security. 70 Pa.C.S.A. § 1–501(a) (1981). The alternative to recision for a seller of securities who establishes that the buyer purchased the security in violation of the PSA is the difference between the sale price and the price the buyer received when the buyer disposed of the security. 70 Pa.C.S.A. § 1–501(b). Under the Pennsylvania Securities Act, a plaintiff may sue only the individual or other legal entity with whom the plaintiff stands in privity. So, if a named defendant did not buy the security from the plaintiff or sell it to the plaintiff, no liability would attach to that defendant under the PSA. 70 Pa.C.S.A. § 1–506 (1981).

■ The Pennsylvania Securities Act does not supplant the common-law remedies available to an injured party in a security transaction, it merely supplements them. *id.* Under Pennsylvania common law, an injured party is not limited to suit against one in privity with him, but may sue *any individual or legal equity who aided or abetted the perpetration of the fraud, See e.g. Littler v. Dunbar*, 365 Pa. 277, 74 A.2d 650 (1950); *Cameron v. Carnegie Trust Co.*, 292 Pa. 114, 140 A. 768 (1928); *Humbird v. Davis*, 210 Pa. 311, 59 A. 1082 (1904); *Eckrich v. DiNardo*, 283 Pa.Super. 84, 423 A.2d 727 (1980). Furthermore, the injured party

is not limited in the remedies that he may seek as he is under the PSA, but may seek compensation for *any* damages that directly flow from the fraud. *Scaife Company v. Rockwell-Standard Corporation*, 446 Pa. 280, 285 A.2d 451 (1971), *cert. denied*, 407 U.S. 920, 92 S.Ct. 2459, 32 L.Ed.2d 806 (1972); *Neuman v. Corn Exchange National Bank and Trust Co.*, 356 Pa. 442, 51 A.2d 759 (1947); *but cf. Tilghman v. Dollenberg*, 418 Pa. 604, 213 A.2d 324 (1965). In addition, the *Biggans* court noted that Pennsylvania common law also would recognize an action against a brokerage firm for breach of a fiduciary duty. *See e.g. Claughton v. Bear, Stearns & Co.*, 397 Pa. 480, 156 A.2d 314 (1958); *Butcher v. Newburger*, 318 Pa. 547, 179 A. 240 (1935); *Vollmer v. Newburger*, 277 Pa. 282, 121 A. 56 (1923).

■ The plaintiffs have sued Parker-Hunter under two theories to establish a security act violation. The first theory charges that Parker-Hunter aided and abetted Otto in a security-fraud scheme. The PSA does not impose civil liability on an aider and abettor of a security fraud who does not stand in privity with the victim. Therefore, under *Biggans, supra*, since there is *no comparable remedy* under PSA, the limitations period must be that period which applies common-law fraud, the forum state law which provides the comparable remedy. That period is six years.

Plaintiffs, in a second theory, maintain that their deposits in the discretionary accounts at Parker-Hunter amounted to an investment contract, and thus, a sale of securities. *See Tcherepnin v. Knight*, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967); *Securities and Exchange Commission v. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). As we have indicated, under the Pennsylvania Security Act, the defendant's liability in this situation is limited to the difference between the price paid for the security and the amount received by the injured party on disposition thereof. However, plaintiffs seek the full amount of the actual damages that they suffered from the alleged security fraud, not the limited damages the PSA affords.

Based upon *Roberts* and *Biggans*, to determine which limitations period applies in a section 10(b) and Rule 10b–5 suit, the court must compare the remedies available under the PSA and those available under common-law fraud and decide which state law best comports with the federal securities policies. Applying these principles, we conclude that the Pennsylvania common-law fraud limitation-period is the appropriate statute of limitations to be applied.

## II. INDEMNITY CLAUSE

As one of its defenses and as a separate counterclaim, the defendant contends that based on the indemnification clause contained in the Option Trading Authorization (OTA) each plaintiff executed and delivered to the defendant, the plaintiffs are bound to hold the defendant harmless from any judgment that any plaintiff may obtain. The plaintiffs have moved for partial summary judgment to strike this defense and counterclaim.

The defendant does not challenge the plaintiffs' argument that the defendant would not have a right to indemnity for its own violations of federal security laws. Security Act of 1933, § 14, 15 U.S.C. 77n; *See Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953); *Allied Artists Pictures Corp. v. Giroux*, 312 F.Supp. 450 (S.D.N.Y. 1970). The defendant argues, however, that it has a claim for indemnity in two situations. First, if a plaintiff should fail to obtain a judgment on his Exchange Act claim, the defendant contends that it is entitled to reimbursement for its cost of defense. And second, if a plaintiff does not succeed under his Exchange Act claims but does prevail under his common-law claim, the defendant contends it should be held harmless for any judgment entered against it.

■ We begin with the general proposition that the construction of an indemnity contract is a question of law for the court to decide. *First National Bank of Spring Mills v. Walker*, 289 Pa. 252, 137 A. 257 (1927). Under Pennsylvania law, the court must strictly construe the scope of an in-

demnity contract against the party seeking indemnification. *Brown v. Moore*, 247 F.2d 711 (3rd Cir.), *cert. denied*, 355 U.S. 882, 78 S.Ct. 148, 2 L.Ed.2d 112 (1957). The court must first determine whether the language of the indemnity clause is clear and unambiguous, and only where the court finds ambiguity in the language may it consider the circumstances under which the contract was signed. *East Crossroads Center, Inc. v. Mellon Stuart Co.*, 416 Pa. 229, 205 A.2d 865 (1965).

■ In the cases *sub judice* the operative language of the indemnity clause states:

The undersigned hereby authorizes Herbert E. Otto (whose signature appears below) as his agent and attorney in fact to buy, sell and trade in stocks, bonds, any other securities and options in accordance with your terms and conditions for the undersigned's account and risk and in the undersigned's name, or number on your books. The undersigned hereby agrees to indemnify and hold you harmless from and to pay you promptly on demand any and all losses arising therefrom or debit balance due thereon. *Option Trading Authorization*.

The defendant argues that this language obligates the plaintiffs to indemnify the defendant for any expense incurred by the defendant that is associated with the plaintiffs' option trading account.

Thus, the defendant's indemnity claim boils down to the contention that regardless of what the defendant did which resulted in harm to the plaintiffs, if that harm somehow is associated with the funds committed to the option trading account, the plaintiffs must bear the burden of the defendant's actions. The plaintiffs counter that the OTA requires indemnification only for losses arising out of the buying, selling, or trading of securities.

The plaintiffs' complaints contain four common-law counts against the defendants, i.e., breach of contract, breach of fiduciary duty, negligence, and civil conspiracy. The defendant conceded during oral argument that under Pennsylvania case law the in-

demnity clause was not drawn broad enough to encompass a claim by the indemnitee, Parker-Hunter, to be held harmless for its own negligence. Tr.Arg. p. 33. Thus, we are left with the question of whether the language of the indemnity clause clearly and unambiguously protects the defendant against liability for civil conspiracy and for violations of its fiduciary and contractual duties.

It is clear that the indemnity agreement present in the cases *sub judice* is sufficient to require the indemnitors to hold Parker-Hunter harmless for expenses that Otto incurred in managing the option trading accounts, including payments to settle purchases made by Otto for the indemnitors and to cover any losses suffered through short sales. However, in view of *Brown, supra,* the court is reluctant to construe the indemnity clause in issue in such a manner that it shifts to the plaintiffs the risk of loss resulting not only from Otto's conduct, but also from the defendant's own acts, in the absence of clear language in the indemnity clause requiring this result. We believe that the language of the indemnity clause is simply not specific and clear enough to require plaintiffs to indemnify the defendant for any judgment against it based on the defendant's own breach of common-law duties owed to the plaintiffs, or for the defendant's cost of defense in this action. Accordingly, the plaintiffs' motion to strike the defendant's claim for indemnification will be granted.

### III. ARBITRATION

The final matter for consideration is the defendant's motion to stay the common-law counts of breach of contract, breach of fiduciary duty, negligence and civil conspiracy, pending arbitration. The defendant has filed its motion to stay in the *Ging, Entrees,* and *Scott* cases but not in *Mihalke.* The defendant's motion is based on a "Customer's Agreement" form signed by each plaintiff, which provides that:

> Any controversy between you (Parker/Hunter) and the undersigned (Plaintiffs) arising out of or relating to this contract or the breach thereof, shall be settled by arbitration . . . .

The plaintiffs first contend that the defendant has waived its right to arbitration and second that the factual bases of the common-law counts and the security counts are so intertwined that the entire complaint should be presented to the jury.

█ The argument that defendant waived its right to arbitration has merit only in the *Ging* case. In that case, the plaintiffs' original complaint did not assert a common-law claim. The defendant answered the complaint and raised as a defense and counterclaim the previously discussed indemnity clause. Thereafter, the *Ging* plaintiffs filed an amended complaint and for the first time raised their common-law causes of action. The defendant immediately moved to stay these claims pending arbitration.

The *Ging* plaintiffs contend that when the defendant counterclaimed by asserting the indemnity clause and then participated in discovery it waived its right to arbitrate the plaintiffs' contract claims. While the defendant agrees that a party may waive its right to arbitration, 9 U.S.C. § 3 (1970); *Cornell & Company v. Barber & Ross Company,* 360 F.2d 512 (D.C.Cir.1966), it argues that its actions were not incompatible with its right to arbitration. It contends that its claim for indemnification for defense costs should the plaintiffs fail to establish their Exchange Act claims is a compulsory counterclaim; i.e., one which must be asserted in this case or forever lost, and, therefore that it should not be penalized for raising it. The flaw in this argument, however, is that the defendant's claim for indemnification is not a compulsory or, for that matter, even a permissive counterclaim. *Universal Underwriters Insurance Co. v. Security Industries, Inc.,* 391 F.Supp. 326 (W.D.Wa.1974). The claim for attorney's fees is inchoate until the main case is resolved. *Cf.* 3 Moore's Federal Practice, ¶ 13.13, cases cited at fn. 25 (2nd ed. 1980).

In the *Ging* case, the court is faced with the anomalous situation in which the defendant first raised the contract derivative right. The defendant, through its counterclaim, placed the plaintiffs on notice that it

intended to litigate its right to indemnification, not through arbitration as provided for in the contract, but in court. And even though the defendant's right to indemnification had not yet matured, its attempt to raise the contract claim in this court is quite inconsistent with its right to submit the matter to arbitration. *Midwest Window Systems v. Amcor Industries*, 630 F.2d 535 (7th Cir. 1980). After the defendant filed the counterclaim, it then proceeded to make full use of discovery on this issue. In our judgment, this combination of the assertion of a contract claim and the subsequent use of discovery on that issue, has prejudiced the plaintiffs. *id.; Gavlik Construction Co. v. H. F. Campbell*, 526 F.2d 777 (3rd Cir. 1975); *Gutor International AG v. Raymond Packer Co., Inc.*, 493 F.2d 938 (1st Cir. 1974). Accordingly, we find that in the *Ging* case the defendant waived its right to arbitration.

In the *Entrees* and *Scott* cases, the plaintiffs' original complaints contained common-law claims. In its answer, the defendant asserted its right to arbitration as to those counts, moved to stay pending arbitration, and brought its counterclaim for indemnity.

The mere answering of a complaint and filing of a counterclaim do not amount to a waiver of a right to arbitration. *Gavlik, supra.* From the time the defendant moved to stay the common-law counts, the defendant prudently has proceeded to protect itself through the use of discovery pending a determination of the motion. We do not find a waiver by the defendant in any of this conduct. *id.; N & D Fashions, Inc. v. DHJ Industries, Inc.*, 548 F.2d 722 (8th Cir. 1977).

The plaintiffs next argue that the breach of contract count, the breach of fiduciary duty count, and the conspiracy count are inextricably intertwined with the federal security claims and all should be submitted to the same jury. The court recognizes that a number of cases have discussed this, *See Sawyer v. Raymond, James & Associates, Inc.*, 642 F.2d 791 (5th Cir. 1981); *Miley v. Oppenheimer & Co., Inc.*, 637 F.2d 318 (5th Cir. 1981); *Fox v. Merrill Lynch & Co.*, 453 F.Supp. 561 (S.D. N.Y.1978); *Rolf v. Blyth Eastman Pillow & Co., Inc.*, 424 F.Supp. 1021 (S.D.N.Y.1977), *aff'd in part, sub nom, Rolf v. Eastman Dillon & Co., Inc.*, 570 F.2d 38 (2nd Cir.), *cert. denied*, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978), however, in our judgment the proper accommodation between the strong federal policy to recognize the contractual choice of an arbitration forum, *Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH*, 585 F.2d 39 (3rd Cir. 1978), and a plaintiff's absolute right to have his federal security claims heard in federal court, *Wilko, supra*, is to sever the common-law claims, order them to arbitration, and stay the arbitration until the federal security claims have been resolved.

Since, as the plaintiffs concede, their claims for punitive damages cannot be maintained under the Exchange Act and are viable only if plaintiffs succeed on the state common-law claims, the court will deny the defendant's motion to strike the claim for punitive damages in *Ging*, where we have held that the defendant has waived its right to have the common-law claims submitted to arbitration. In *Entrees* and *Scott* the court will sever the punitive damage claims and refer them along with the underlying state common-law claims to arbitration.

An appropriate order will be entered.