**Philip GOODMAN**

v.

**Ronald G. MOYER, et al.**

**Civ. A. No. 80–4687.**

United States District Court,
E. D. Pennsylvania.

March 3, 1981.

William T. Hangley, Philadelphia, Pa., for plaintiff.

Peter J. Hoffman, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

Defendants move to dismiss the complaint in this securities fraud case, asserting that (1) the complaint fails to state a claim upon which relief can be granted, (2) the complaint fails to allege fraud with sufficient particularity, and (3) the Court lacks personal jurisdiction over two of the eight defendants.

Plaintiff Philip Goodman was hired by defendant Digi-Log Corporation in 1977. Shortly thereafter, plaintiff bought from a third party 60,000 shares of Digi-Log common stock. Plaintiff paid $25,002.25 for 7,693 shares. The remaining 52,307 shares were paid for with plaintiff's promissory note for $169,997.75. The purchase agreement referred to the fully paid shares as just that: "fully paid shares." The shares for which the promissory note was given were described as "the Collateral." The purchase agreement provided that plaintiff would convert "Collateral" shares into "fully paid" shares as he reduced the principal owed on the promissory note, and that he could prepay all or any part of the note at any time. The purchase agreement allowed Digi-Log a 90-day option to buy 75% of the collateral shares if plaintiff's employment at Digi-Log ceased during its second year.

In March of 1979, plaintiff left the employ of Digi-Log. By agreement of the parties, plaintiff had approximately 45 days to prepay the note and convert some or all of the Collateral shares before Digi-Log would exercise its option to purchase a portion of the Collateral shares.

Plaintiff alleges that during the period in which he attempted to raise money to retire his debt under the note, he was told by Digi-Log through defendant Moyer, who was its president, that federal securities laws and regulations restricted the resale of the shares (Complaint ¶ 26). Under the terms of the Purchase Agreement plaintiff had agreed not to sell either Collateral or fully paid shares without an opinion of Digi-Log's counsel that sale of the shares would be permitted under the federal securities laws and regulations.

Plaintiff further alleges that sale of the fully paid shares was not restricted, that Digi-Log was on the verge of substantial and propitious changes in its commercial prospects, that Digi-Log and Moyer knew of these imminent changes, that Digi-Log and Moyer concealed what they knew from plaintiff, and, that plaintiff was induced not to prepay his note, allowing individual defendants to obtain the Collateral shares.

■ Defendants' Motion to Dismiss under F.R.Civ.Pro. 12(b)(6) is predicated on paragraph 5(e) of the Purchase Agreement, which states: "Buyer [plaintiff] agrees not to sell any of the Collateral for a period of two years from date of agreement without a resolution of the Board of Directors of Digi-Log approving such sale." Defendants argue that any activity on their part could have had no effect because plaintiff was contractually bound not to sell his shares and "[a]ny restrictions under Rule 144 or the securities acts were surplusage. The collateral shares were restricted by the very language of the contract." (Defendants' Memorandum of Law at 7). Defendants argue that this contractual restriction was as much a cause of plaintiff's failure to exercise his option to purchase the Collateral as were any alleged misrepresentations

or non-disclosures and that plaintiff could not, therefore, as a matter of law be defrauded by defendants. *Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Co.*, 495 F.2d 228 (2d Cir. 1974). However, it appears from the complaint that plaintiff, had he known what was allegedly withheld, would have borrowed money and converted his Collateral into fully paid shares, exercising in essence a premium option. Instead, plaintiff avers, because he was told that the shares were restricted, he was prevented from raising enough money to prepay his note and reap the benefit, the size of which was then unknown to him, of the prospective increase value of the shares. (Complaint ¶¶ 27, 32). The complaint seems, therefore, to allege two independent bases for plaintiff's loss of opportunity. The first is that he could not raise money to prepay the note, which he would have done, because he was told erroneously that the sale of the shares would be restricted. The second is that plaintiff would have persisted in his efforts to prepay the note, and, indeed, would have been more likely to succeed, if he had known of the changes that had occurred within the company that made the option more attractive (Complaint ¶ 38). Paragraph 5(e) of the contract would not have affected this transaction. Therefore the motion to dismiss for failure to state a claim will be denied.

 Defendants' motion to dismiss the complaint for failure to plead fraud with sufficient particularity will be denied. The complaint sets forth with more than adequate specificity the nature of the alleged fraud, the alleged perpetrators, and the time in which the activities took place.

Finally, defendants Ankney and Gwinner, directors of Digi-Log, move for dismissal on the basis that this Court lacks personal jurisdiction over them because of defective service of process. Plaintiff's service of the complaint was accepted by Digi-Log's office manager, Carroll Kline at Digi-Log's corporate offices. The return of service form includes the names of Ankney and Gwinner.

Pennsylvania Rule of Civil Procedure 1009(b)(2)(iii) provides that service may be made "at any office . . . of the defendant . . . to the person for the time being in charge thereof," whether or not the defendant is a resident of Pennsylvania, Pa.R. Civ.Pro. 2079(a)(2), (c)(1). Under Pennsylvania law the directors of a corporation are considered to have an "office" at the principal place of business of the corporation. *Pincus v. Mutual Assurance Co.*, 457 Pa. 94, 321 A.2d 906 (1974). Accordingly, service of process was effective as to Ankney and Gwinner, and their motion to dismiss will be denied.

The order denying defendants' motion to dismiss renders moot their motion to stay discovery.