**Philip GOODMAN**

v.

**Ronald G. MOYER, et al.**

**Civ. A. No. 80-4687.**

United States District Court,
E. D. Pennsylvania.

Sept. 25, 1981.

As Amended Sept. 29, 1981.

William T. Hangley, Daniel Segal, Philadelphia, Pa., for plaintiff.

Daniel I. Murphy, Lee Rosengard, David Franceski, Philadelphia, Pa., for Digi-Log, Inc., Moyer, etc.

Daniel Ryan, Steven Springer, Philadelphia, Pa., for Duane, Morris & Heckscher and Frederick Dreher.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

Certain defendants[1] move for summary judgment in this securities fraud case, arguing (1) that the statute of limitations has run on plaintiff's federal securities law claims, and (2) that plaintiff fails to state a legal claim with regard to alleged misrepresentations.

The alleged facts of this case have already been recited in summary form in this Court's Memorandum and Order of March 3, 1981. *Goodman v. Moyer, et al.*, 523 F.Supp. 33 (E.D.Pa.1981) (Order denying defendants' Motions to Dismiss and to Stay Discovery). Plaintiff alleges that he was misled in two significant ways, and that he consequently relinquished the right to prepay a note securing a purchase of certain

---

1. Moving defendants are Digi-Log, Inc., Moyer, Emory, Taraborelli, Ankney, Linsalata, Gwinner, and Jolliffe.

stocks at a favorable price. *See Goodman v. Moyer*, 523 F.Supp. at 34.

## 1. The Statute of Limitations

Plaintiff filed his complaint on December 4, 1980. Defendants argue that a one-year statute of limitations applies to his federal securities law claims, and the alleged acts of misrepresentation occurred before December 4, 1979. The federal claims are therefore, defendants argue, time-barred.

Defendants correctly state that the limitations law of Pennsylvania controls here, *Biggans v. Bache Halsey Stuart Shields, Inc.*, 638 F.2d 605, 607 (3d Cir. 1981), although selection of the proper period of limitations requires analysis guided by "a confused and inconsistent body of law." *Biggans*, 638 F.2d at 612 (Weis, J., dissenting). This Court must choose the most nearly "analogous" Pennsylvania law to sections 10(b) and 20 of the Securities Exchange Act of 1934 [2], and Rule 10b–5 of the Securities Exchange Commission [3], as they are implicated by the allegations made in this case, and apply the statute of limitations appropriate for that Pennsylvania law.

Defendants argue that the limitations in the Pennsylvania Securities Act [4], which is one year [5], should be applied, because section 1–401 of Pennsylvania Securities Act "addresses itself to the identical conduct addressed in Rule 10b–5: fraudulent misrepresentation by a buyer to a seller of securities or by a seller to a buyer." Defendant's Memorandum of Law at 13.

■ Plaintiff argues, and this Court agrees, that the issue of the appropriate limitations period is different in the case of Digi-Log, Inc. as opposed to the individual Digi-Log defendants. [6] With respect to claims against Digi-Log, Inc. the Court must follow *Biggans* and rule that the

Pennsylvania Securities Act period of limitations does not apply. Section 501 of that act (to which the limitation of one year is fixed) is quite clear in its applicability only to those in privity with the plaintiff. *Sharp v. Coopers & Lybrand*, 649 F.2d 175, 192 (3d Cir. 1981). Because Digi-Log was neither a buyer nor a seller of the shares in this case, an action under section 1–501 of the Pennsylvania Securities Act could not lie. Therefore the most clearly analogous cause of action in the state counts, under the *Biggans* rationale, is common law fraud, for which the period of limitations is either six or two years. *Compare Biggans*, 638 F.2d at 607 n.2 *with Sharp*, 649 F.2d at 192. Plaintiff's claims against Digi-Log, Inc. are therefore not time-barred.

■ More problematic is the choice of the appropriate limitations period for plaintiff's claims against the individual Digi-Log defendants. The recent cases cited by both sides, *Biggans*, *Sharp*, and *Roberts v. Magnetic Metals Co.*, 611 F.2d 450 (3d Cir. 1979) do not dictate a result here. The rule of *Biggans*, that

> [w]here the state Blue Sky law does not provide the plaintiff with a cause of action for the relief requested, but common law does, *and* where the state legislature framed its statute to supplement, rather than supplant available common law remedies, it is the common law limitations period which must be applied in federal securities actions.

638 F.2d at 610 (emphasis added) simply does not apply to this case. [7] Plaintiff's argument that the Pennsylvania Securities Act "supplements" rather than "supplants" the common law remedies available is correct. *See* 70 Pa.Stat.Ann. § 1–506 (Purdon), *Biggans*, 638 F.2d at 610. However, the first part of the *Biggans* rule is not met here, because the Pennsylvania Securities Act "provide[s] plaintiff with a cause of

---

**2.** 15 U.S.C. §§ 78j(b), 78t (1976).

**3.** 17 C.F.R. § 240.10b–5 (1979).

**4.** 70 Pa.Stat.Ann. § 1–401 *et seq.* (Purdon).

**5.** *Id.* § 1–504.

**6.** Moyer, Emory, Taraborelli, Ankney, Linsalata, Gwinner, and Jolliffe, are hereinafter referred to as "the individual defendants."

**7.** *Accord, Sharp v. Coopers & Lybrand*, 649 F.2d 175, 192 (3d Cir. 1981).

action for the relief requested." *Biggans*, 638 F.2d at 610. The Court is left then without a clear rule, but with the direction of the Court of Appeals to find the most nearly analogous state law to these federal claims, and to apply the appropriate statute of limitations.

As mentioned, defendants argue that section 401 of the Pennsylvania Securities Act "addresses itself to the identical conduct addressed in Rule 10b–5." Defendants' Memorandum of Law at 15. Section 401 states:

It is unlawful for any person, in connection with the offer, sale or purchase of any security in this State, directly or indirectly:

(a) To employ any device, scheme or artifice to defraud;

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

(c) To engage in any act, practice or course of business which operates or would operate as a fraud of deceit upon any person.

By lack of contrast rule 10b–5 states:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

(1) to employ any device, scheme, or artifice to defraud,

(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the cir-

cumstances under which they were made, not misleading, or

(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

Although the texts of the two rules of law are practically identical [8], plaintiff argues that the proof required at trial is so different that the 10b–5 action is in fact more similar to a common law fraud action. The crux of plaintiff's argument is that section 1–401 of the Pennsylvania Securities Act does not require proof of scienter.

Plaintiff is correct in that 10b–5 actions and common law fraud actions share scienter as a required element of proof. *Compare Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 214, 96 S.Ct. 1375, 1391, 47 L.Ed.2d 668 (1976) *with In re Thornes Estate*, 344 Pa. 503, 511, 25 A.2d 811 (1942). None of the parties has been able to supply the Court with determinative case law as to what is required in an action under section 401, and the Court has not found a Pennsylvania case on all fours with this one.[9]

Plaintiff has advanced an ingenious argument: that section 17 of the Securities Act of 1933 is congruent with section 401 of the Pennsylvania Securities Act, and that because actions under section 17(a)(2) and (3) have been held not to require scienter as an element of proof, *Aaron v. SEC*, 446 U.S. 680, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980), Pennsylvania courts would similarly not require a showing of scienter. The major flaw in this argument is that section 17 addresses only fraud on the part of the purchaser, while rule 10b–5 controls purchases and sales.

**8.** The Commissioner's Note to section 101 of the Uniform Securities Act, from which section 401 of the Pennsylvania Securities Act is taken reads: "This section is substantially the Securities and Exchange Commission's Rule [10b–5], ... which in turn was modeled upon § 17(a) of the Securities Act of 1933, ... except that the rule was expanded to cover the purchase as well as the sale of any security." 7A Uniform Laws Annotated 568 (1978).

**9.** The law in states other than Pennsylvania where the Uniform Securities Act has been adopted does not reveal a national pattern of interpretation. This is in large part because those states have adopted varying versions of the Uniform Act. The Court has found no state where the state "Blue Sky Law" permits a private right of action for violation of section 101 of the Uniform Securities Act, and where the issue of scienter is resolved.

This Court is not convinced that the Pennsylvania courts would not require proof of intent to defraud. In light of the similarity of the language used, and the similar policy carried out through Rule 10b–5 and sections 1–401 and 1–501 of the Pennsylvania Securities Act, the Court must conclude that Pennsylvania courts would require similar elements of proof in actions brought under those sections of the Pennsylvania Securities Act. *Accord, Stephen A. Ritt v. Thriving Enterprises Limited et al.*, Slip op. at 15–16, Civil Action No. 80–4953 (E.D.Pa. September 18, 1981).

Having decided that the analogous action in Pennsylvania would be brought under the Pennsylvania Blue Sky Law, which carries with it a one year statute of limitations, the Court must next consider whether or not the statute has run on the 10b–5 claims brought against the individual defendants. Those defendants argue that the statute began to run by August of 1979, and that the federal securities law claims against the individual Digi-Log defendants are time-barred. Defendants argue that plaintiff received actual notice, or upon the exercise of reasonable diligence should have known of the acts allegedly in violation of the securities laws. Plaintiff argues that the fraudulent concealment tolled the statute.

First, defendants argue that by August 29, 1979 plaintiff had three documents that should have put him on notice that the shares he had been informed were not free trading were in fact free trading. Second, defendants argue, the two material changes in company business that plaintiff had not been told about when he permitted his right to prepay his note expire, were known to him at least by July 1979.

A. The Free Trading Status of the Shares

The four documents that purportedly show that plaintiff was on notice about the free-trading status of the shares are (1) a letter from Moyer to plaintiff dated July 16, 1979, (2) a draft of a consent-to-transfer letter, dated July 10, 1979, (3) an opinion letter, dated July 10, 1979, (3) an opinion letter of Duane, Morris and Heckscher dated August 15, 1979, and (4) the actual consent-to-transfer letter that plaintiff signed on August 29, 1979.

Moyer's letter, addressed "Dear Phil" informed plaintiff that the shares, the purchase of which were secured by his note to Inverness Capital Corporation, had been purchased by the individual defendants. The letter further informed plaintiff that "the transaction is exempt from registration," that the shares could be transferred "without legend," but that they could not be "sold . . . or otherwise disposed of in any manner that would constitute a violation of the Securities Act of 1933." An attached draft of a consent-to-transfer letter contained that formula in its last paragraph.

The writer of the opinion letter of August 15, 1979, which was given to plaintiff, concluded that the proposed transfer would not "violate Section 5 of the Securities Act of 1933." The preceding paragraph stated

Interpretations (no action letters) of the federal securities laws have generally concluded without reference to Rule 144 which is not exclusive, that privately purchased securities which have been held for a period of three years may subsequently be sold without registration by a person who is not at that time deemed an issuer, underwriter or dealer. Since the securities in question were held by Inverness for a period of approximately three years prior to their sale to Mr. Goodman, and based upon factual information set forth above, we are of the opinion that Inverness did not constitute an issuer, underwriter or dealer, and that the Shares did not constitute "restricted securities" in the hands of Mr. Goodman.

Attached to the executed consent-to-transfer letter of August 29, 1979 was the Duane, Morris and Heckscher opinion letter of August 15, 1979.

Plaintiff's deposition testimony is that he read over the telephone the last concluding paragraph of the Duane, Morris and Heckscher letter to his attorney. When the attorney read the entire letter about one

year later, he concluded that shares were probably free-trading, but at the time of the transfer to defendants, plaintiff's focus appears to have been on the one transaction rather than upon his ability to sell the shares in the market. Whether or not this constituted reasonable diligence on plaintiff's part is not an issue that can be resolved as a matter of law.

Plaintiff's argument is that the defendants actively misled him, and that his apparent inability to pierce the deception is understandable and forgivable. Plaintiff argues that the misrepresentations made to him about the status of the stock, *see, e. g.*, Plaintiff's Exhibit P–109, (A letter of April 4, 1979, granting plaintiff more time to prepay his note, stating that the two year holding period during which the shares could be converted into free-trading shares would commence "as of the date the purchase price for such shares has been fully paid.") and Plaintiff's Exhibits P–202, 203, and 204 (correspondence showing that when plaintiff sold his shares, having held them for two years, he was required by defendants to comply with all the requirements of Rule 144—indicating that the shares had not been free-trading before December 17, 1979) when coupled with the inherent ambiguity of the terminology used by all of the actors, created a situation such that a reasonable man could not have been on notice as to the alleged deception. At this juncture, plaintiff argues, only full trial of the facts will yield a fair conclusion as to the notice given plaintiff and his reasonable diligence. The Court agrees. The August 15 letter from Duane, Morris and Heckscher can be read to state merely that the prospective transfer would be legal. Indeed that is all it expressly "opines." A reader with some knowledge of securities law might deduce that, the securities not being "restricted" after all, plaintiff might sell them freely in the market. Plaintiff, however, is not a lawyer, and he had been, he alleges, expressly told the opposite, namely, that the shares could not be sold in the market. (*See* Deposition testimony of Goodman at I–90–94; II–170–172; IV–23). His lawyer might have helped him to realize the truth and to act upon the August 15 opinion letter, but, as already stated, it is a jury question, not an issue of law whether or not plaintiff should have, among other things, read the entire letter over the telephone to his lawyer.

Similarly, the information imparted to Goodman, that the shares need not bear a restrictive legend and that the shares were exempt from registration was not necessarily inconsistent with plaintiff's understanding that a particular transaction—a private sale to individuals involved with Digi-Log—was being discussed. Whether or not plaintiff should have inquired into the reason that the shares could be sold without a restrictive legend, and consequently have discovered that the shares had been free-trading for some time is for the jury and not the Court to resolve. *Cf. Briskin v. Ernst & Ernst*, 589 F.2d 1363, 1369 (9th Cir. 1978).

### B. The New Financing

Defendant argues that a press release of July 19, 1979 announcing a loan from BASF company, which plaintiff admittedly read, put him on notice that the assertions made earlier by Moyer, that the financing was "dead," were untrue. Plaintiff argues that the July release was not incompatible with his belief that Moyer had been telling the truth in the initial conversation. By July, plaintiff's right to prepay his note had expired, and Digi-Log's option to buy them had accrued. Although the July release might appear to a trier of fact to be the kind of notice that would make a reasonable man suspicious, the Court cannot conclude that plaintiff knew or should have known as of that date that Moyer had lied earlier, if he did. The jury may well conclude that a reasonable man in plaintiff's position would have concluded that he had been duped or misinformed, or that at some date before December 1979 he should have suspected as much. The Court cannot rule that the releases, as a matter of law, started the statute running.

## C. The Jolliffe Hiring

Plaintiff's testimony is that he learned at the end of April or in early May of 1979 that a manager with the necessary production expertise to overcome the company's production difficulties, Mark Jolliffe, had been hired. He had been told in February that no such change was contemplated, and that the current production head would be permitted to prove himself. That information contributed, plaintiff alleges, to his decision to permit his right of prepayment to expire. The reasoning stated above applies equally here; plaintiff is entitled to argue to a jury that plaintiff reasonably believed in May that Moyer's stated decision of February was changed by late April, and that the statements made in February were true. Plaintiff is further entitled to argue that the alleged deception carried out by defendants rendered his actions reasonably diligent in bringing suit in December 1980.

## 2. Failure to State a Claim—Status of the Shares

■ Defendants argue that plaintiff's federal securities law claims should be dismissed for failure to state a claim because the shares in question were indeed restricted at all relevant times. Thus, argue defendants, even if they had intended to defraud plaintiff, it was a wrong without an injury because the ostensibly deceiving statement was true.

Defendants urge the Court to decide as a matter of law in the light of newly-revealed facts that the shares relinquished by plaintiff were never free-trading, and that Duane, Morris and Heckscher's opinion letter of August 15 was simply wrong.

Defendants argue that John W. Hanes was a "controlling person" [10] of both Inverness and Digi-Log, that Inverness was therefore an "affiliate" of Digi-Log. Inverness, therefore, as an affiliate of the issuer of the stock, could not have rendered the stock free-trading under Rule 144 by holding it for two years.[11] The thrust of this argument misses the point of this lawsuit because it ignores the alleged injury done. The undisputed facts are that plaintiff was bound by the first opinion Digi-Log and its counsel,[12] and, that relying on it he was unable to raise money to prepay the note secured by his shares. Defendants were thus enabled to buy the shares and sell them at a profit. Whether or not the first opinion communicated to plaintiff was correct is simply irrelevant. If plaintiff had been told what defendants believed was true,[13] he could have made that profit. The alleged misrepresentations effected a transfer of opportunity from plaintiff to the individual defendants, and, therefore, if the allegations in the complaint are true, there was both wrong and injury.

Implicit in defendant's argument is the theory that although they avoided challenge by the Securities and Exchange Commission, that plaintiff would not have. More benignly, defendants might argue that the truth would eventually have been revealed, and plaintiff would have been forced to hold his shares for two years. Of course, if plaintiff had sold his stock before anyone reconsidered the status of the shares, he would now be holding the profits made by defendants. There is no reason to believe that the SEC would be any less favorably disposed toward plaintiff than it appears to be toward defendants. The crucial point however is that the misrepresentation was not that the shares were restricted when in fact they were; the misrepresentation was that Digi-Log and its counsel *believed* that the shares were restricted, when in fact, it

---

**10.** *See,* 15 U.S.C. § 77b(11) (1976); 17 C.F.R. § 230.405(b) (1981).

**11.** 15 C.F.R. § 230.144(a)(3).

**12.** Plaintiff was bound by the terms of the purchase agreement, *see* P–11 at 3, not to sell his pledged shares without Digi-Log's approval.

**13.** For the reasons stated it is not necessary for this Court to resolve at this stage of this case whether or not the shares were indeed restricted. Although plaintiff has unsatisfactorily rebutted defendant's argument that the shares were restricted, the issues of "control", *see* text accompanying note 10 *supra,* are sufficiently fact-laden that trial of the issue would be necessary.

is alleged, they did not. In the universe containing plaintiff, defendants, and the stock market, the "truth" was determined by defendants' belief as to the status of the shares. Plaintiff was bound by that belief, as it was expressed to him, and insofar as defendants told him something that did not reflect their true belief, there was a material misrepresentation.