## Engle v. Cassell

*Robert M. Frankhouser,* for plaintiff.
*Maryfrances Cassell,* pro se.

GEORGELIS, *J.,* December 16, 1986 — Before the court is plaintiffs' motion for post-trial relief. Briefs having been filed and oral argument having been heard, the motion is ready for disposition.

## FACTUAL HISTORY

All plaintiffs are members of the Engle family and shall be referred to hereafter collectively as plaintiffs. Defendant, Maryfrances Cassell, was the president and controlling stockholder of defendant, Marans Inc., and they shall be referred to hereafter collectively as defendants. In February 1980, defendants presented an investment proposal to plaintiffs, which they accepted and which resulted in defendant's purchasing for $160,000, the outstanding stock of 739 Inc., a corporation which owned certain real estate. Defendants then sold control of 739 Inc., to plantiffs for $100,000, which amount plaintiffs tendered by way of promissory notes.

On two subsequent occasions, defendants represented to plaintiffs that, if plaintiffs purchased stock in 739 Inc., the proceeds of the purchase could be used to purchase additional real estate. Plaintiffs purchased the additional stock, such that their total investment exceeded $200,000, tendered by a combination of cash and promissory notes. Subsequently, plaintiffs investigated the holdings of 739 Inc., and, after deciding that defendants had over-evaluated them, they stopped payment on the promissory notes.

## PROCEDURAL HISTORY

Plaintiffs filed suit seeking monetary damages and asserted three theories of liability: common law

fraud, breach of contract and violation of the Pennsylvania Securities Act, 70 P.S. §1-101 et seq. Defendants counterclaimed for the amounts due on the promissory notes. Throughout the litigation, defendant, Maryfrances Cassell, has appeared pro se. The jury's verdict was in favor of defendants on the theories of common law fraud and breach of contract. As to the violation of the act, the verdict was that defendants had violated it, but no damages were awarded to plaintiffs. On defendants' counterclaim, the verdict was in favor of defendants, and the damages awarded were $88,544.

## MOTION FOR POST-TRIAL RELIEF

Plaintiffs timely filed their motion for post-trial relief, in which they contend that: (a) the jury's decision not to award damages, even though it found that defendants had violated the act, is contrary to the act and to the instructions of the court, (b) the jury's decision not to award damages, even though it found that defendants had violated the act, is against the weight of the evidence and contrary to law, and (c) the jury's verdict for defendants on the counterclaim, in light of its finding that defendants had violated the act, is contrary to law and to the instructions of the court. The motion seeks a judgment notwithstanding the verdict in favor of plaintiffs and in the amount they paid for the 739 Inc. stock or, in the alternative, a new trial for the determination of damages to be paid to them. It also seeks a judgment notwithstanding the verdict in favor of plaintiffs on defendants' counterclaim or, in the alternative, a new trial on the counterclaim. The motion does not challenge the jury's verdict on the common law fraud and breach of contract theories.

Defendants argue that the jury's failure to award damages, even though it found a violation of the act, is consistent with the act and that the verdict for defendants on their counterclaim was consistent with the other portions of the verdict. For the reasons stated below, we agree with defendants' position and, therefore, deny plaintiffs' motion for post-trial relief.

## DISCUSSION

### A. *Judgment Notwithstanding Verdict and New Trial*

Since plaintiffs seek judgments notwithstanding the verdict on their security fraud count and on defendants' counterclaim and since they seek, in the alternative to both of those judgments, a new trial, we will first examine the standards for considering each. Even though a motion for a new trial and a motion for judgment notwithstanding the verdict are based upon a disaffirmance of the verdict, each claims a different error or irregularity committed during trial and each seeks a different form of relief. A motion for judgment notwithstanding the verdict proceeds on the theory that there should have been a judgment as a matter of law in favor of the moving party where a verdict has been rendered against him; whereas, a motion for a new trial contemplates the need, in the interest of substantial justice, for a retrial of an issue of fact.

A judgment notwithstanding the verdict is the proper remedy where the proof of the party having the burden of proof was legally insufficient to go to the jury. On the other hand, the granting of a new trial is the proper remedy where the verdict is against the weight of the evidence but the proof was legally sufficient to allow the case to go to the jury. 10 Standard Pennsylvania Practice 2d §61.5 (1982).

Both of these motions ask a court to examine the validity of a jury's verdict and to consider the propriety of a court's invasion of a jury's duty and function. Our appellate courts have held, generally, that any invasion of the province of the jury should be avoided at all costs, especially where the court is requested to amend or otherwise disregard a portion of the jury's verdict. Where a party requests an amendment or change of the jury's verdict, the court must proceed cautiously and with a predisposition in favor of not disturbing the sanctity of the jury's findings. *Richards v. Dravo Corp.*, 249 Pa. Super. 47, 58, 375 A.2d 750 (1977); *May v. Pittsburgh Railways Co.*, 209 Pa. Super. 126, 224 A.2d 770 (1966).

Regarding the disaffirmance of a verdict by way of a judgment notwithstanding the verdict, our appellate courts have held that doing so provides an extreme remedy that should be granted only sparingly. "A judgment n.o.v. is an extreme remedy and should be entered only in a clear case after the evidence has been evaluated in a light most favorable to the verdict winner." (citations omitted). *Beechwoods Flying Service Inc. v. Al Hamilton Contracting Corp.*, 317 Pa. Super. 513, 517-18, 464 A.2d 440, 442 (1983); aff'd, 504 Pa. 618, 476 A.2d 350 (1984). Regarding the disaffirmance of a verdict by way of granting a new trial, our appellate courts have held that new trials should be rarely granted and should be limited to cases of gross abuse of discretion by the trial judge or cases of application of erroneous rules of law by the trial court. *Atene v. Lawrence*, 456 Pa. 541, 318 A.2d 695 (1974).

Even though judgments notwithstanding the verdict and new trials are not liberally granted, if war-

ranted, they will be granted, in the case of a motion for judgment notwithstanding the verdict, when there is no issue of fact (10 Standard Pennsylvania Practice 2d, §64:3), and, in the case of a motion for a new trial, when an injustice has been done (10 Standard Pennsylvania Practice 2d, §62:6). Specifically, where a party is entitled to a judgment as a matter of law, a judgment notwithstanding the verdict is proper (10 Standard Pennsylvania Practice 2d, §64:3); where a verdict is contrary to the charge of the court, a new trial is proper (10 Standard Pennsylvania Practice 2d, §62:56); and, where the verdict is against the weight of the evidence, a new trial is proper (10 Standard Pennsylvania Practice 2d, §62:59).

## B. *Plaintiffs' Motion*

In their brief, plaintiffs identify two issues in their motion for post-trial relief: (a) was the jury's award of no damages, even though it found a violation of the act, contrary to the charge of the court and contrary to the act? and (b) was the jury's award in favor of defendants, on their counterclaim, contradictory to its finding that defendants had violated the act? Plaintiffs contend that both of these questions should be answered in the affirmative. For all of the reasons stated below, we find that the jury's verdict was neither contrary to the court's charge nor to the act and that its verdict on the counterclaim was, therefore, consistent with the balance of the verdict.

## C. *The Charge*

Addressing first plaintiffs' contention that the jury's award of no damages, even though it found a violation of the act, was contrary to the court's charge, we find the contention without merit. Plain-

tiffs rely on the following portion of the court's charge to the jury:

"Now, I'm going to read a very brief phrase of what the act says would be the damages if you find a violation of the act.

"The consideration paid for the security, together with interest at the legal rate, from the date of payment less the amount of any income or any distribution in cash or in kind.

"That would be damages, if you found a violation."

Plaintiffs argue that the court's use of the word "would" required the jury to award damages, in the event it found a violation of the act. We do not believe that plaintiffs' interpretation of this option of the charge is correct, because it is inconsistent with the meaning of at least two other portions of the charge and with the meaning of specific instructions given the jury on the verdict slip.

First, in its charge to the jury, while explaining the general area of liability and damages, the court stated:

"Once you have decided that, if you decide it in the affirmative, that there was liability, then you go on to the question of damages.

And the verdict slip asks you what damages, *if any*, would you award in each of these areas." (emphasis added).

At the conclusion of the court's charge, when plaintiffs' counsel and Cassell were asked for additions or corrections to the charge, plaintiffs' counsel did not object to this portion of the charge.

Second, in response to a question from the jury, submitted after it had begun its deliberations, the court responded, in part:

"And then I went on to tell you that if you were to find liability under the act the measure of damages that *would be available for your awarding, if any,* would be as follows: the consideration paid for the security together with interest at the legal rate from the date of payment, less the amount of any income or distribution in cash or in kind." (emphasis added).

Prior to answering this question for the jury, the court discussed with plaintiffs' counsel and Cassell, in camera and on the record, how it was planning to respond to the question, and plaintiffs' counsel did not object. In addition, after the question had been answered for the jury, the court asked both plaintiffs' counsel and Cassell for comments, and plaintiffs' counsel did not object.

In both of these portions of the instructions to the jury, we believe the court, by using the words, "would be available" and "if any," provided the jury an option to either award damages or not to do so, if liability were found. We conclude that these two portions of the charge, when read in conjunction with the portion to which plaintiffs refer us, do not indicate a mandate to the jury to award damages and that the jury simply exercised its option in favor of awarding no damages.

This conclusion is supported by the instructions given to the jury regarding the verdict slip. Question 9 of the verdict slip asked: "Do you find that defendants, Maryfrances Cassell and Marans Inc., violated the Pennsylvania Securities Act, as to all plaintiffs?" The jury answered it in the affirmative. Question 10 asked: "If your answer to question 9 is yes, what damages *if any,* do you award to plaintiffs?" (emphasis added). The jury answered "none." In addition, when the verdict was being an-

nounced, these two questions and answers were read by the court, and the jury confirmed their answers, as noted on the verdict slip.

Before the verdict slip was shown and explained to the jury during the charge, it was shown to plaintiffs' counsel and Cassell, in camera and on the record. Plaintiffs' counsel had no objections to it and stated that he was satisfied with it.

If plaintiffs were concerned about how the jury would interpret the "if any" language, which the court used in its charge and in the verdict slip, they had ample opportunity, during the two in-camera conferences and in court after the original charge and after the answering of the jury's question, to either request the court to change or clarify that language or to object on the record, neither of which they did. "[A] party may not sit by silent, take his chances on a verdict, and, if it is adverse, then complain of matter which, if error, could have been eradicated during the trial if brought to the court's attention properly and timely." *Zeman v. Canonsburg Borough*, 423 Pa. 450, 453, 223 A.2d 728 (1966), quoting *Segriff v. Johnston*, 402 Pa. 109, 166 A.2d 496 (1960); see also, *Litten v. Jonathan Logan Inc.*, 220 Pa. Super. 274, 286 A.2d 913 (1971).

For all of these reasons, we believe that the court's charge to the jury did not include a mandate to award damages, in the event it found a violation of the act, but that, instead, it afforded the jury the option to award no damages, which it exercised. Therefore, we conclude that the awarding of no damages was not contrary to the court's charge.

## D. *The Act*

We will now address plaintiffs' contention that the jury's verdict of no damages, in light of its verdict of liability under the act, was contrary to the act. Plaintiffs contend that the act mandates the award of damages when liability is found for violation of the act. They rely on section 1-501(a) of the act which provides, in relevant part:

"Any person who [violates sections 301, 401, 403, 404 or 407(c)] shall be liable to the person purchasing the security from him. . . ."

They contend that the word "shall" mandates the award of damages where liability has been found. We disagree with this contention for four reasons.

First, and most simply, section 1-501(a) provides that any person who violates the act "shall be liable." It does not provide that a violation of the act or liability under the act will result in an award of damages. We agree with plaintiffs' contention, in their brief, that nothing in the act suggests that there can be liability without damages, but we note, inversely, that nothing in the act suggests that there must be damages with liability.

The second reason, closely associated with the first, is that damages are not always required upon every finding of liability. "While the right to damages depends on the injury and not on the amount of damages . . . the courts, in some instances, have refused to award even nominal damages where the wrong complained of as distinguished from the damage sustained is trivial, as where only the letter, and not the spirit, of a contract is violated." 25 C.J.S. Damages §13.

The Superior Court was confronted with an analogous question in the case of *Kirby v. Carlisle*, 178 Pa. Super. 389, 116 A.2d 220 (1955). The lower

court had molded a verdict in favor of defendant after the jury had returned a verdict of "guilty of negligence but no damages allowed to plaintiff." Plaintiffs filed a motion for a new trial and asserted, inter alia, that the verdict was contrary to the law and contrary to the charge of the court, as is asserted instantly. That motion was denied, and the Superior Court upheld the denial, stating, at 392, that plaintiffs:

". . . must not only prove that defendant was negligent but they must prove that the negligence caused an injury to the minor-plaintiff for which they are entitled to recover damages. Proof of one without the other affords no right to recovery.

"Even if the minor-plaintiff was injured, it is possible that the injury could be so slight that the jury would be justified in refusing to award any damages."

Similarly, the Superior Court, in *Sisk v. Duffy,* 201 Pa. Super. 213, 216, 192 A.2d 251, 253 (1963), held that: "When a plaintiff fails to establish damages in a tort action defendant is entitled to a verdict although guilty of negligence." See also, Prosser on Torts, §30 (4th Ed.) 1971.

The third reason for which we disagree with plaintiffs' contention that the act mandates an award of damages once liability has been found is that our appellate courts have not always interpreted the word "shall" in statutes to be mandatory. "The word 'shall,' however, can be interpreted as mandatory or merely directory." *Francis v. Corleto,* 418 Pa. 417, 428, 211, A.2d 503 (1965). Our Superior Court, citing *Francis v. Corleto,* set forth, in *Tyler v. King,* 344 Pa. Super. 78, 84-85, 496 A.2d 16 (1985), the mandatory/directory standard as follows:

". . . it has long been the rule in Pennsylvania that the word 'shall,' although usually mandatory or imperative when used in a statute, may nonetheless be directory or permissive, depending upon the Legislature's intent. . . . In particular, where a statute's mandatory language pertains to the action of a court, it is usually a grant of authority. . . . It therefore can be construed on this basis alone as merely granting the court the authority to do so."

With the act, even though there is no express legislative history available, the Legislature's intent can be inferred from the actual statute which was adopted. The act is essentially an adaptation of the Uniform Securities Act, 7B Uniform Laws Annotated §101 et seq. See the official comments prior to section 1-101 of the act. The act's civil liabilities section, section 1-501, is patterned after section 410 of the Uniform Act. See comments to section 1-501.

The fact that the act is patterned after the Uniform Act is instructional in that it is not a mere codification of it; some significant changes were made. In particular, when adopting the act's civil liability section, section 1-501, our Legislature changed the wording from "is liable" to "shall be liable." We believe this selection of language is evidence of the Legislature's intent not to make the awarding of damages mandatory but to grant Pennsylvania courts the authority to do so. Compare the act's section 1-501(a) with the Uniform Act's section 410(a).

The fourth reason for which we disagree with plaintiffs' contention is that we believe that the act requires proof of intent to defraud as a necessary element for recovery and that, because the jury found no common law fraud, there can be no recovery under the act. We rely on *Goodman v. Moyer,*

523 F. Supp. 35 (E.D., Pa. 1981), in which the court, at 39, held:

"This court is not convinced that the Pennsylvania courts would not require proof of intent to defraud. In light of the similarity of the language used, and the similar policy carried out through rule 10b-5 [of the Securities Exchange Commission] and sections 1-401 and 1-501 of the Pennsylvania Securities Act, the court must conclude that Pennsylvania courts would require similar elements of proof in actions brought under these sections of the Pennsylvania Securities Act. Accord *Stephen A. Ritt v. Thriving Enterprises Limited et al.,* slip op. at 15-16, Civil Action No. 80-4953 (E.D., Pa. September 18, 1981)."

The *Goodman* analysis was predicated on a comparison of the act's section 1-401 (the anti-fraud provision on which the instant action is based) with section 10(b) [15 U.S.C. §78j(b) (1983)] of the Federal Securities Act and with rule 10b-5 of the Securities Exchange Commission, 17 C.F.R. §240.10b-5 (1983). The court found that the two acts were virtually identical and that, since intent is required for recovery under the Federal Act, intent would also be required for recovery under the act.

In relying on *Goodman,* we are aware of *Brown v. Erie Compression Co.,* 59 Erie L.J. 134 (1976), which held that "allegations of traditional scienter" are not required under the act. However, we are more persuaded by the rationale of *Goodman,* primarily because the civil liabilities provisions of the Uniform Act, after which the civil liabilities provisions of the act are modeled, are based on section 12(2) of the Federal Act (see Official Code Comment to section 410 of the Uniform Act) and because section 12(2) has been held to require proof of

intent before recovery is allowed. See *Lorber v. Beebe,* 407 F. Supp. 279 (S.D. N.Y. 1975), which held that section 12(2) does not impose liability without fault; *Junker v. Crory,* 650 F.2d 1349 (5th Cir. 1981), which held that a defendant can escape section 12(2) liability by showing a lack of scienter; and *Hill York Corp. v. American International Franchises Inc.,* 448 F.2d 680 (5th Cir. 1971), which held that a lack of scienter is a defense. The United States Supreme Court has similarly held, in *Ernst & Ernst v. Hochfelder,* 425 U.S. 185 (1976), that scienter is required for recovery under the Federal Act.

The *Goodman* analysis has been attacked because of the lack of similarity between the act's section 1-401 and the Securities Exchange Commission's rule 10b-5. See comment, Proof of Fault in Actions for Security Fraud: A Cloud in Pennsylvania's Blue Sky, 46 U. of Pitt. L. Rev. 1083 (1985). However, as noted, section 1-401 of the act was modeled after the Uniform Act's section 101 (see the comments to the act's section 1-401), and "[s]ection 101 of the Uniform Securities Act is modeled after rule 10b-5" (see comment, State Blue Sky Laws: An Alternative to the Federal Securities Law and State Common Law in Third-Party Accountant Malpractice Cases, 57 Temp. L.Q. 601, 645 (1984) and 17 C.F.R. §240.10b-5 (1983)). For this reason, we believe this lack of similarity argument is unpersuasive.

We believe that our Legislature, in adopting the act, intended to track, at least for the provisions relevant to the instant action, the Uniform Act, which is modeled after the federal act. Therefore, we adopt *Goodman* and hold that the act requires proof of intent to defraud as a necessary element for recovery.

For the above four reasons, we conclude that the "shall be liable" language in section 1-501(a) of the act does not mandate an award of damages, even with a finding that the act was violated. This conclusion allows the harmonizing of the jury's failure to award damages, even though a violation of the act was found, with the remainder of the verdict. Such harmony or explanation of the jury's findings is mandated in an attempt to maintain the sanctity of the jury verdict. "[E]very reasonably possible intendment is to be made in favor of the findings of a jury, and an inconsistency may justifiably be declared to exist *only if there is no reasonable theory or conclusion to support the jury's verdict.*" *Hornak v. Pgh. Rwys. Co.,* 433 Pa. 169, 175, 249 A.2d 312 (1969). (citations omitted, emphasis added).

Therefore, we conclude that the awarding of no damages was not contrary to the act. With this conclusion and with the previously stated conclusion that the awarding of no damages was not contrary to the court's charge, we are satisfied that, under the law recited in section A of the herein discussion, a judgment notwithstanding the verdict, or in the alternative a new trial, is not warranted and would be improper. Accordingly, plaintiffs' motion for judgment notwithstanding the verdict, or in the alternative for a new trial, regarding the amount paid by plaintiffs for the 739 Inc., stock, will be denied.

E. *Counterclaim*

Lastly, plaintiffs contend that they are entitled to a judgment notwithstanding the verdict, or in the alternative a new trial, because the jury's verdict on the counterclaim, in favor of defendants is contradictory to their finding of a violation of the act. For all of the reasons stated in sections C and D of the discussion herein, the jury's responses to the ver-

dict slip's questions 9 and 10, the two questions regarding the act, must be treated as their verdict for no recovery for plaintiffs under the act. Doing so harmonizes that portion of the verdict with the remaining portions, including the counterclaim.

We believe that the jury's verdict on the counterclaim is not contradictory to the verdict on the act. Therefore, under the law cited in section A of the herein discussion, a judgment notwithstanding the verdict, or in the alternative a new trial, is not warranted and would be improper. Accordingly, plaintiffs' motion for judgment notwithstanding the verdict, or in the alternative for a new trial, regarding the counterclaim, will be denied.

Accordingly, we enter the following

## ORDER

And now, December 16, 1986, plaintiffs' motion for post-trial relief is denied.